B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| **PLAINTIFFS:**<br>Briarwood Capital, LLC | **DEFENDANTS:**<br>Lennar Corporation; Lennar Homes of California, Inc.<br><br>**NOMINAL DEFENDANTS:**<br>Nicolas Marsch III; Barry Minkow; and Fraud Discovery Institute, Inc. |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Mintz Levin Cohn Ferris Glovsky and Popeo P.C.<br>c/o Jeffry A. Davis<br>3580 Carmel Mountain Road, Suite 300<br>San Diego, CA 92130<br>858-314-1500 | **ATTORNEYS** (If Known)<br>O'Melveny & Myers LLP<br>c/o Ben Logan<br>400 South Hope Street<br>Los Angeles, CA 90071<br>Attorneys for Lennar Corporation and Lennar Homes of California, Inc.<br><br>b/r Law Group, LLP<br>c/o Michelle B. Baker<br>Northern Trust Building<br>4370 La Jolla Village Drive, Suite 670<br>San Diego, CA 92122<br>Attorneys for Barry Minkow and Fraud Discovery Institute, Inc. |
| **PARTY** (Check One Box Only)<br>☒ Debtor      ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor      ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor    ☒ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Declaratory and injunctive relief regarding a stay of litigation against the debtor (11 U.S.C. §§ 105, 362; 28 U.S.C. § 1334).

American LegalNet, Inc.<br>www.FormsWorkflow.com

B104 (FORM 104) (08/07)

| NATURE OF SUIT |
|---|
| (Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.) |

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
      (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☒ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☒ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq*
☐ 02-Other (e.g. other actions that would have been brought in state court
      if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 0.00 |
| Other Relief Sought | |

American LegalNet, Inc.
www.FormsWorkflow.com

**B104 (FORM 104) (08/07), Page 2**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES |||
|---|---|---|
| NAME OF DEBTOR<br>Briarwood Capital, LLC | BANKRUPTCY CASE NO.<br>10-02677-PB11 ||
| DISTRICT IN WHICH CASE IS PENDING<br>Southern District of California | DIVISION OFFICE | NAME OF JUDGE<br>Peter W. Bowie |
| RELATED ADVERSARY PROCEEDING (IF ANY) |||
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>/s/ Jeffry A. Davis |||
| DATE<br>February 28, 2010 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Jeffry A. Davis<br>Attorney for Plaintiff ||

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

American LegalNet, Inc.<br>www.FormsWorkflow.com

1  Jeffry A. Davis (SBN 103299)
   Joseph R. Dunn (SBN 238069)
2  **MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO P.C.**
   3580 Carmel Mountain Road, Suite 300
3  San Diego, CA  92130
   Tel:    858-314-1500
4  Fax:    858-314-1501
   Email: jadavis@mintz.com; jrdunn@mintz.com
5
   Proposed Attorneys for
6  Briarwood Capital, LLC

7

8                     UNITED STATES BANKRUPTCY COURT

9                     SOUTHERN DISTRICT OF CALIFORNIA

10

11 | In re | Case No.  10-02677-PB11 |
12 | BRIARWOOD CAPITAL, LLC, a Delaware limited liability company, | Adv. Proc. No.  _____ |
13 | | **COMPLAINT FOR (1) DECLARATORY RELIEF; AND (2) INJUNCTIVE RELIEF** |
   | Debtor. | |
14
15 | BRIARWOOD CAPITAL, LLC, | |
16 |          Plaintiff, | |
17 |          v. | |
18 | LENNAR CORPORATION, a Delaware Corporation, and LENNAR HOMES OF CALIFORNIA, INC., a California Corporation, | |
19 | | |
20 |          Defendants, | |
21 | and | |
22 | NICOLAS MARSCH III, an individual, BARRY MINKOW, an individual, and FRAUD DISCOVERY INSTITUTE, INC., a California Corporation, | |
23 | | |
24 | | |
25 |          Nominal Defendants. | |

26

27

28

MINTZ LEVIN COHN
FERRIS GLOVSKY AND
POPEO P.C.

-1-

1    Plaintiff Briarwood Capital, LLC alleges as follows:

2    **JURISDICTION AND VENUE**

3    1.    On or about February 23, 2010 (the "Petition Date"), Briarwood Capital, LLC

4    ("Briarwood" or the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of

5    the United States Code (the "Bankruptcy Code") in this United States Bankruptcy Court for the

6    Southern District of California (the "Bankruptcy Court").

7    2.    This Court has exclusive jurisdiction over this proceeding pursuant to 11 U.S.C. §

8    362 and 28 U.S.C. §§ 157 and 1334.

9    3.    This matter constitutes a core proceeding pursuant to 11 U.S.C. §§ 105 and 362,

10   and 28 U.S.C. §§ 157(b)(2)(A), (O), and 1338.

11   4.    Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

12   **THE PARTIES**

13   5.    Plaintiff Briarwood is a Delaware limited liability company, with its principal

14   place of business in California, and is the debtor and debtor in possession in the chapter 11 case

15   entitled *In re Briarwood Capital, LLC*, Case No. 10-02677-PB11 (the "Bankruptcy Case").

16   Briarwood is primarily engaged in the business of real estate development, including the

17   development of master planned communities.  Briarwood is wholly owned by nominal defendant

18   Nicholas Marsch III.

19   6.    Plaintiff is informed and believes and thereon alleges that defendant Lennar

20   Corporation ("Lennar Corp") is Delaware Corporation and at all times relevant herein, was doing

21   business nationwide, including in California.  Lennar Corp and its various corporate affiliates and

22   ventures are hereinafter sometimes referred to as "Lennar."

23   7.    Plaintiff is informed and believes and thereon alleges that defendant Lennar

24   Homes of California, Inc. ("Lennar Homes") is a California corporation, doing business in

25   California, and at all times relevant herein was qualified to do business in California and an

26   affiliate of Lennar Corp.

27   8.    Nominal defendant Nicolas Marsch III ("Marsch") is a San Diego resident.

28   Marsch is the sole member and manager of the Debtor.  Marsch is also the debtor and debtor in

1    possession in that certain chapter 11 case entitled *In re Nicolas Marsch III*, Case No. 10-02939-

2    PB11 (the "Marsch Case"), pending in the United States Bankruptcy Court for the Southern

3    District of California.

4         9.    Plaintiff is informed and believes and thereon alleges that nominal defendant Barry

5    Minkow ("Minkow") is a San Diego resident.

6         10.    Plaintiff is informed and believes and thereon alleges that nominal defendant

7    Fraud Discovery Institute, Inc. ("FDI") is a California corporation with its principal place of

8    business in San Diego, California.

9                                    **GENERAL ALLEGATIONS**

10   **I.    General Background**

11        11.    In or about August 1997, Marsch and Lennar San Jose Holdings, Inc. ("LSJH"), an

12   affiliate of Lennar Corp, formed HCC Investors, LLC ("HCC") as a Delaware limited company

13   for the purpose of holding title to, and further developing, a 540-acre parcel located in Rancho

14   Santa Fe, San Diego County, California, and commonly known as "The Bridges."

15        12.    At the time of HCC's formation, Marsch and LSJH were the sole members of

16   HCC and held separate 50% interests in HCC.  The LSJH interest in HCC has since been

17   repeatedly assigned to various other entities affiliated with Lennar, including Lennar Land

18   Partners II ("LLP II") and LLP II HCC Holdings, LLC ("HCC Holdings").  Marsch has also

19   transferred his original interest in HCC.  On or about May 13, 1998, Marsch assigned his 50%

20   interest in HCC to Briarwood.

21        13.    At all times, pursuant to the terms of the parties' agreements, Lennar and its

22   affiliates, including Lennar Homes, have served as the Manager and Project Manager of HCC.

23        14.    The Bridges property was purchased by HCC in February 1998 for $52 million.

24   The purchase was made possible due to Marsch's years of dedication to his vision of an exclusive

25   residential community and country club at the property.  In fact, Marsch had first obtained title to

26   the property more than 20 years ago.

27        15.    Since its acquisition, The Bridges property has been developed into an exclusive

28   residential community and private country club which Lennar has described as an "extraordinary

MINTS LEVIN COHN
FERRIS GLOVSKY AND
POPEO P.C.

-3-

1  community" surrounding "one of America's great private golf clubs."  The homes have won

2  major design awards including the Grand Award, Best Single Family Detached Home, and

3  Residential Detached Project of the Year at the 2004 Gold Nugget Awards, as well as the

4  Building Industry Association of San Diego's award for Best Detached Housing Product

5  $1,500,001 and over.

6        16.    The private golf course at The Bridges, designed by the Robert Trent Jones II

7  Group, has been equally successful.  In 2003, 2004 and 2005, The Bridges hosted the "Battle at

8  the Bridges," a nationally televised, prestigious best-ball team match featuring players such as

9  Tiger Woods, John Daly, and Phil Mickelson.

10        17.    The tremendous market success of The Bridges created a unique opportunity for

11  Briarwood and Lennar's affiliates to capitalize on the goodwill developed by the market success

12  of The Bridges project by working together on other potential master-planned communities in the

13  Rancho Santa Fe area.  Briarwood and Lennar therefore jointly acquired, through an entity known

14  as Lennar Bridges, LLC ("Lennar Bridges"), an adjacent parcel of approximately 80 net acres,

15  initially known as Santa Fe Creek, which was ultimately incorporated into The Bridges

16  development.  Briarwood and Lennar developed the Santa Fe Creek site into 40 building sites,

17  including 32 examples of the award-winning Cortile Collection of homes with finished prices of

18  approximately $3 million per home.

19        18.    In addition, the parties pursued another nearby property, commonly known as

20  McCrink Ranch, which consisted of approximately 542 developable acres. The McCrink family

21  had controlled the property for approximately 30 years and had worked to obtain government

22  entitlements in order to allow the McCrink Ranch property to be developed into a high-end

23  master-planned residential community.

24        19.    Commencing before 1998, Marsch had begun to actively pursue the acquisition of

25  the McCrink Ranch property. Briarwood and Marsch recognized the McCrink Ranch project

26  could benefit from the "halo effect" of the market success of The Bridges if it could be marketed

27  as being "brought to you by the builders of The Bridges."  For this reason and others, including

28  strong feelings of trust and loyalty established during The Bridges development process,

MINTS LEVIN COHN
FERRIS GLOVSKY AND
POPEO P.C.

-4-

1    Briarwood determined to invite Lennar to jointly pursue the McCrink Ranch development

2    opportunity in partnership with Briarwood.  Lennar thereafter agreed to pursue the McCrink

3    Ranch real estate development opportunity jointly with Briarwood.

4       20. From 1998 through early 2006, Briarwood expended considerable services,

5    including time, effort and funds, in furtherance of the parties' anticipated purchase of McCrink

6    Ranch.  Notwithstanding these efforts, Lennar's longstanding fiduciary relationship with

7    Briarwood, and the express agreement to jointly pursue the property with Briarwood, Lennar

8    ultimately joined with another entity, Quadrant Investment Group, LLC, to squeeze out

9    Briarwood and usurp from it the McCrink Ranch opportunity.

10       21. Meanwhile, despite the widely-recognized accomplishment of The Bridges,

11    Lennar was reporting a substantial negative net cash flow in project accountings, allegedly due to

12    increased project costs, all of which are controlled by Lennar.  In fact, an accounting provided by

13    Lennar in late 2007 (after Briarwood had filed suit, as described below) demonstrated continued

14    unjustifiable increases in costs and consequent reductions to net cash flow.  The result is that

15    Lennar projects zero profits to Briarwood for its 50% membership interest and substantial

16    contributions to HCC, despite over $500 million in revenues.

17    **II.** **The Lennar Litigation**

18       22. As a result of Lennar's actions with respect to The Bridges and McCrink Ranch, in

19    late 2006, Briarwood instituted two lawsuits against Lennar in San Diego Superior Court.

20    Initially, on November 13, 2006, Briarwood filed *Briarwood Capital, LLC v. Lennar Homes of*

21    *California, Inc., et al.*, Case No. GIC 875457 (the "McCrink Ranch Action"), for the purpose of

22    recovering losses associated with Lennar's usurption of the McCrink Ranch opportunity.  On

23    December 22, 2006, Briarwood filed *Briarwood Capital, LLC v. Lennar Land Partners II, et al.*,

24    Case No. GIC 877446 (the "Bridges Action"), to recover damages caused by Lennar's

25    mismanagement (or worse) of The Bridges development.

26       23. Briarwood's filing of the McCrink Ranch Action and the Bridges Action spawned

27    additional litigation between the parties.  Specifically, Lennar filed *Lennar Homes of California,*

28    *Inc. v. DLA Piper US LLP, et al.*, Case No. 37-2008-00076811, on January 28, 2008, and *Lennar*

MINTS LEVIN COHN
FERRIS GLOVSKY AND
POPEO P.C.

1    *Homes of California, Inc. v. DLA Piper US LLP, et al.*, Case No. 37-2008-00092842, on

2    September 30, 2008 against Marsch, individually, and Lennar's former counsel, Brian Foster at

3    DLA Piper US LLP.  In those actions, Lennar alleges that, with respect to The Bridges and

4    McCrink Ranch, Marsch improperly interfered with Lennar's relationship with Mr. Foster, and

5    aided and abetted that counsel's breach of duty to Lennar.

6          24.     In addition, Lennar initiated a Florida lawsuit relating to these same facts.  In

7    *Lennar v. Briarwood Capital, LLC and Nicolas Marsch, III*, Case No. 08-55741 CA 10 (the

8    "Florida Action"), filed in the Circuit Court of the 11th Judicial Circuit In and For Miami-Dade

9    County, Florida (the "Florida State Court"), Lennar alleges "defamatory statements, extortionate

10    conduct, and unlawful acts" in connection with the Bridges and McCrink residential communities

11    and intentional interference with Lennar's business.  Plaintiff is informed and believes and

12    thereon alleges that the claims asserted in the Florida Action have no merit, and that the case was

13    filed by Lennar for the sole purpose of increasing the litigation burden on Briarwood and Marsch

14    and gaining leverage in the McCrink Action, the Bridges Action and the related litigation.[1]

15          25.     The five lawsuits discussed in the above paragraphs are hereafter collectively

16    referred to as the "Lennar Litigation."

17          26.     Plaintiff is informed and believes and thereon alleges that after the Lennar

18    Litigation was commenced, Lennar took actions purposefully designed to deprive Briarwood and

19    Marsch of the capital necessary to fund both the Lennar Litigation and those parties' other

20    development opportunities.  Specifically, pursuant to Section 6.05 of the HCC Operating

21    Agreement, Briarwood is to receive certain fees from HCC, which are in addition to any net cash

22    flow otherwise owed.  These fees include: (1) an annual management fee of $250,000 and an

23    annual overhead fee of $60,000, both subject to a cost of living adjustment; (2) an override fee of

24    3.5% of gross sales of all products within the project; and (3) one-half of the resale transfer fee

25    payable to HCC upon resale of properties located within the project.

26          27.     These fees described above are accorded a protected status under the HCC

---

27    [1]   The Florida Action has been removed to the United States District Court for the Southern District of Florida,
28    Miami Division (the "Florida Federal Court"), Case No. 10-cv-20574, pursuant to a Notice of Removal filed by the
Debtor on February 24, 2010 under 28 U.S.C. § 1452.

Operating Agreement.  For instance, the HCC Operating Agreement provides that the override fee "shall not be subject to offsets, deductions, or adjustments of any kind."  In fact, Marsch specifically negotiated the HCC Operating Agreement with Lennar and obtained such protective provisions for the specific purpose of ensuring that he would receive the payments due him *regardless* of any other circumstance.

28.    For over nine years, Lennar honored its obligation to cause HCC to make these payments. At all times since June 2008, however, Lennar has caused HCC to withhold these payments from Briarwood, which to date total approximately $3 million with accrued interest -- yet another litigation tactic designed to increase the financial burden on Marsch and Briarwood in the hopes they would capitulate in the Lennar Litigation.  Lennar has not provided any justification for its refusal to provide Briarwood with the monies it is owed under the HCC Operating Agreement.  In fact, HCC has issued Form K1s to Briarwood demonstrating that these funds have been "distributed," but continues to hold the funds as restricted cash.

29.    The trial in the Bridges Action, which case has been pending for over three years, commenced on June 22, 2009 after Lennar's extensive and unduly expensive pre-trial machinations designed to drive Briarwood and Marsch into submission.  Plaintiff is informed and believes and thereon alleges that Lennar has expended tens of millions of dollars in litigation expense and has dragged out the trial in the Bridges Action as long as possible.  After a short recess, the trial is scheduled to resume on Wednesday, March 3, 2010 and is expected to last through the end of April 2010.  In the Bridges Action, Briarwood seeks to recover over $100 million from the Lennar defendants on a variety of claims, as well as punitive damages which may well be hundreds of millions of dollars.

30.    In the meantime, the toll of the Lennar Litigation on Briarwood and Marsch has been severe.  Briarwood and Marsch have experienced significant cash flow problems simply funding the Bridges Action, particularly when combined with Lennar's wrongfully causing HCC to withhold millions of dollars due immediately to Briarwood under the HCC Operating Agreement and the fact that  Briarwood and Marsch continue to be subjected to various other tactical lawsuits brought by Lennar.  Ultimately, Briarwood and Marsch were forced to

1   commence their respective chapter 11 cases to protect against the heavy demands of the

2   peripheral Lennar Litigation, which were brought for the purpose of increasing leverage over

3   Briarwood and Marsch and diverting those parties' focus and resources from the Bridges Action,

4   and due to financial pressures caused by Lennar's action which have resulted in creditors of

5   Briarwood and Marsch starting to foreclose on the assets of Briarwood and Marsch.

6   **III.    The Florida Action**

7       31.    The Florida Action represents one of Lennar's most recent attempts to increase the

8   litigation burden on Briarwood and Marsch.  In the Fourth Amended Complaint, Lennar Corp and

9   Lennar Homes assert a variety of claims against Briarwood claiming that Briarwood and Marsch

10  conspired with Minkow and FDI to defame, extort and otherwise interfere with Lennar's

11  business.  A true and correct copy of Plaintiffs' Fourth Amended Complaint without exhibits (the

12  "FAC"), filed by the plaintiffs in that action, Lennar Corp and Lennar Homes (the "Florida

13  Plaintiffs"), on February 17, 2010, is attached hereto as **Exhibit A**.

14      32.    The Florida Action is an elaborate smokescreen which is clearly aimed at exerting

15  leverage over Briarwood and Marsch with respect to the Bridges Action -- the outcome of which

16  could have a potentially devastating effect on Lennar, a publicly-traded company.  Lennar has

17  demonstrated over the past several years that it has a seemingly bottomless litigation fund, which

18  it has chosen to use in the Lennar Litigation rather than paying Briarwood the funds to which it is

19  entitled.

20      33.    During the course of the Florida Action, Lennar has pursued discovery at a furious

21  pace, and has attempted to increase the burden and expense of that litigation on Briarwood and

22  the other non-debtor defendants at every turn.  In fact, Briarwood's ongoing and increasing

23  monthly legal expenses in the Florida Action was one of the precipitating factors for

24  commencement of the Bankruptcy Case.

25      34.    That the Florida Action is truly an action aimed at gaining leverage over

26  Briarwood and Marsch is demonstrated by the manner in which the claims are asserted in the

27  FAC.  Throughout the FAC, the Florida Plaintiffs assert the "Marsch Parties" (defined in the

28  preamble to the FAC as Marsch and Briarwood "collectively") engaged in various acts as part of

MINTS LEVIN COHN
FERRIS GLOVSKY AND
POPEO P.C.

-8-

a scheme and conspiracy to defame, extort and otherwise harm the reputation and business of Lennar. *See*, *e.g.*, FAC, ¶¶ 4-14, 16, 19, 20-22, 24, 26, 27, 29-31, 34-36. The Florida Plaintiffs thus refer to the Debtor and Marsch interchangeably, as one collective actor, ascribing the acts and liability of one to the other.

35.     The Florida Plaintiffs also allege at numerous points throughout the FAC that the actions of Minkow and FDI (the "Minkow Parties") were done as agents, on behalf of, or otherwise with the "knowledge, consent and ratification" of the "Marsch Parties," and that the "Marsch Parties," including the Debtor, were using the Minkow Parties as an instrument to further their "extortionate, defamatory, and fraudulent objectives and tactics." *See*, *e.g.*, FAC, ¶¶ 14, 22, 24, 26, 27, 29-31, 33, 34, 46. In fact, the Florida Plaintiffs specifically allege that *each* of the defendants in the Florida Action:

> acted as the agent, servant, representative, partner, joint-venturer, and/or employee of the other [d]efendants and, in doing the things hereinafter alleged, was acting within the scope of such agency or employment and with the knowledge, permission, and consent of each other [d]efendant.

*See* FAC ¶ 46. Thus, the Florida Plaintiffs make it clear in the FAC that they seek to impose liability on both Briarwood and Marsch for the allegedly wrongful actions and/or omissions of each of the other defendants, including Minkow and FDI.

36.     An examination of each of the claims demonstrates that it is impractical, if not impossible, to proceed in the Florida Action without violating the rights of the Debtor:

a.     Count I of the FAC asserts that Marsch and Minkow conspired with the Debtor and others to engage in illegal conduct as part of an "Enterprise" to further the illegal conduct. *See* FAC, ¶¶ 52, 52(a), 54. Count I contains specific allegations of acts undertaken by the Debtor as part of the Enterprise, and concludes by asserting that the Debtor is "vicariously liable" for the conduct of Marsch "and for any and all damages proximately caused thereby." *See* FAC, ¶ 66. In essence, the FAC makes clear that the Florida Plaintiffs seek to impose liability on the Debtor, as member of the Enterprise and otherwise, for any liability of the other persons identified therein. *See* FAC ¶¶ 46, 65, 66.

b.      Count II of the FAC asserts the "Marsch Parties," including the Debtor, interfered with the Florida Plaintiffs' contractual relations with a third party.  *See* FAC ¶¶ 68-70. The allegations of Count II fail to distinguish between the acts of Marsch and the acts of the Debtor, and seek to impose liability on both for each other's actions alleged in Count II of the FAC.  *See* FAC ¶¶ 46, 70.

c.      Count III of the FAC asserts the "Marsch Parties," including the Debtor, made false and defamatory statements that injured the business reputation of the Florida Plaintiffs.  *See*, e.g., FAC ¶ 84.  The allegations of Count III fail to distinguish between the acts of Marsch and the acts of the Debtor, and seek to impose liability on both for each other's actions and the actions of the Minkow Parties alleged in Count III of the FAC.  *See* FAC ¶¶ 46, 85, 86.

d.      Count IV of the FAC asserts that the "Marsch Parties," including the Debtor, through their own alleged actions and the alleged actions of the Minkow Parties, engaged in unfair, deceptive and unconscionable acts or practices.  *See* FAC ¶¶ 88-95.  The allegations of Count IV fail to distinguish between the acts of Marsch and the acts of the Debtor, and seek to impose liability on both for each other's actions and the actions of the Minkow Parties alleged in Count IV of the FAC.  *See* FAC ¶¶ 46, 94.

e.      Count V of the FAC asserts that the "Marsch Parties," including the Debtor, engaged in a conspiracy with each other and the Minkow Parties to extort and defame Lennar.  *See* FAC ¶¶ 97-99.  In particular, Count V alleges that the Debtor "worked in concert" with the other defendants as part of an "extortion scheme."  *Id*.  The allegations of Count V fail to distinguish between the acts of Marsch and the acts of the Debtor, and seek to impose liability on both for each other's actions and the actions of the Minkow Parties alleged in Count V of the FAC.  *See* FAC ¶ 46, 99.

f.      Finally, the "Prayer for Relief" does not distinguish between either the causes of action or the parties against whom relief is sought, but simply requests the Florida court impose liability in an amount to be proven at trial.  *See* FAC, page 34.

37.     A review of the FAC demonstrates that the Debtor cannot be extracted from the Florida Action logistically or otherwise.  The Debtor is implicated interchangeably with Marsch

-10-

1    and the Minkow Parties and the purported actions of the Debtor are ascribed to each, and vice-

2    versa.  Because of the nature of the claims asserted in the Florida Action, it is not possible to draw

3    a meaningful distinction between claims asserted against the Debtor and any other claims.  In

4    fact, the claims are inextricably intertwined both in the alleged factual basis which purportedly

5    supports the claims and the liability sought to be ascribed to the individual defendants,

6    particularly in light of the alleged "schemes" and "conspiracy" asserted in the FAC.

7    　　　　38.　　Thus, it is clear that the claims asserted by the Florida Plaintiffs in the Florida

8    Action are each inextricably intertwined both in fact and law, and that proceeding on any of the

9    claims will have a direct effect on the Debtor's estate.  In particular, the Florida Plaintiffs seek to

10    impose liability on the Debtor for any liability of every other defendant.  By proceeding against

11    the other defendants *in any respect*, the Florida Plaintiffs would in effect be attempting to

12    liquidate a claim against the Debtor.  Moreover, given the alleged common actions and identities

13    of the Debtor and the other defendants in the Florida Action, the Debtor would suffer severe

14    prejudice even if it were not actively involved in any litigation in the Florida Action.

15    　　　　39.　　On and after the Petition Date, however, the Florida Plaintiffs have made it clear

16    that they intend to proceed with the Florida Action despite the Debtor's Bankruptcy Case.  In the

17    "Lennar Plaintiffs' Response to Defendant Briarwood Capital, LLC's Suggestion of Bankruptcy"

18    (the "Lennar Response"), filed in the Florida State Court on 25, 2010, the Florida Plaintiffs take

19    the position that the automatic stay arising under 11 U.S.C. § 362(a) in the Debtor's Bankruptcy

20    Case does not operate to stay the Florida Action in its entirety.  Instead, the Florida Plaintiffs state

21    that "section 362 applies only to claims against the debtor; it does not operate to stay claims

22    against non-debtor entities."  A true and correct copy of the Lennar Response is attached hereto as

23    **Exhibit B**.  On February 27, 2010, counsel for the Florida Plaintiffs confirmed by e-mail to

24    counsel for the Debtor that the Florida Plaintiffs intend to move forward with the Florida Action

25    as against the Minkow Parties.

26    　　　　40.　　In addition, counsel for the Florida Plaintiffs has threatened, after the Petition

27    Date, to seek sanctions against one or more of the non-Debtor defendants and/or witnesses in that

28    proceeding if they fail to participate and move forward with discovery, despite the clear prejudice

to the Debtor of pursuing claims against such parties in the Debtor's absence -- claims for which the Florida Plaintiffs assert the Debtor (and Marsch) is not only implicated, but should be held liable.

41.     Briarwood's claims in the Bridges Action are by far the most significant asset of the Debtor's and Marsch's bankruptcy estates, and successful reorganization in both cases hinges on the unfettered ability to pursue those claims to judgment.  This adversary proceeding is filed to obtain from the Bankruptcy Court a determination that the automatic stay arising by virtue of the Debtor's chapter 11 case stays the entirety of the Florida Action, because the claims asserted in that Action are not, and cannot be, severed so as to <u>not</u> affect the Debtor or its estate.  In the alternative, Plaintiff requests the Court resort to its equitable powers under the Bankruptcy Code and otherwise to grant injunctive relief staying the Florida Action until further order of the Bankruptcy Court.

## **FIRST CLAIM FOR RELIEF**

### **(Declaratory Relief)**

42.     Plaintiff incorporates by reference paragraphs 1 through 41 above as if set forth in full herein.

43.     There is a present controversy between the Debtor and the Florida Plaintiffs regarding whether the continuation of the Florida Action constitutes a violation of the automatic stay arising under 11 U.S.C. § 362(a).

44.     Plaintiff desires a judicial declaration that:

a.     the continuation of the Florida Action constitutes the continuation of a judicial, administrative, or other action or proceeding against the Debtor that was brought before the commencement of the Bankruptcy Case, in violation of 11 U.S.C. § 362(a)(1); and

b.     the continuation of the Florida Action constitutes the continuation of a judicial, administrative, or other action or proceeding to recover a claim against the Debtor that was brought before the commencement of the Bankruptcy Case, in violation of 11 U.S.C. § 362(a)(1);

45.     A judicial declaration is necessary and appropriate at this time under the

circumstances in order to ensure the parties to the Florida Action are clear on the effect the automatic stay in the Debtor's case has on the Florida Action.

## SECOND CLAIM FOR RELIEF

### (Injunctive Relief - 11 U.S.C. § 105; 28 U.S.C. § 1334)

46.    Plaintiff incorporates by reference paragraphs 1 through 45 above as if set forth in full herein.

47.    Even if the stay arising under 11 U.S.C. § 362(a) does not automatically stay the Florida Action, in its entirety, injunctive relief should be granted by the Bankruptcy Court to stay the Florida Action.

48.    The Florida Plaintiffs assert in the FAC that there exists such identity between the Debtor and the other defendants that any liability imposed on such other defendants would result in liability to the Debtor.  The claims against such defendants, as asserted in the FAC, are inextricably intertwined with the claims asserted, and the liability sought to be imposed, against the Debtor.  In fact, in seeking relief in the FAC, the Florida Plaintiffs fail in large part to distinguish between acts taken by the four defendants, including the Debtor, and seek relief against <u>all</u> such parties, without regard to any separate identity of the defendant.  Thus, failure to enjoin the Florida Action in its entirety would adversely affect the Debtor's estate, and would adversely and detrimentally influence and pressure the Debtor through the Florida Plaintiffs' pursuit of claims against the other defendants.

49.    The relevant circumstances described above are sufficient to justify the Bankruptcy Court granting immediate injunctive relief to stay the Florida Action as against all defendants, until further order of the Bankruptcy Court, pursuant to the Bankruptcy Court's express authority under 11 U.S.C. § 105 and the Bankruptcy Court's inherent authority under 28 U.S.C. § 1334.

WHEREFORE, plaintiff requests relief as follows:

1.    A judicial declaration that:

a.    the continuation of the Florida Action constitutes the continuation of a judicial, administrative, or other action or proceeding against the Debtor that was brought before

-13-

1  the commencement of the Bankruptcy Case, in violation of 11 U.S.C. § 362(a)(1); and

2          b.      the continuation of the Florida Action constitutes the continuation of a

3  judicial, administrative, or other action or proceeding to recover a claim against the Debtor that

4  was brought before the commencement of the Bankruptcy Case, in violation of 11 U.S.C. §

5  362(a)(1);

6      2.      A temporary restraining order staying all proceedings in the Florida Action

7  pending a hearing on a preliminary and/or permanent injunction;

8      3.      A preliminary and permanent injunction staying all proceedings in the Florida

9  Action, pending further order of the Bankruptcy Court, pursuant to the Bankruptcy Court's

10  express authority under 11 U.S.C. § 105 and the Bankruptcy Court's inherent authority under 28

11  U.S.C. § 1334;

12      4.      Attorneys' fees and costs of suit to the extent recoverable under applicable law;

13  and

14      5.      Any such other and further relief as may be just and proper.

15  DATED:  February 28, 2010

16                                  /s/ Jeffry A. Davis
                                    _____
17                                  Jeffry A. Davis
                                    Joseph R. Dunn
18                                  **MINTZ LEVIN COHN FERRIS GLOVSKY**
                                    **AND POPEO P.C.**
19                                  Proposed Attorneys for
                                    Briarwood Capital, LLC
20

21

22  4846369v.1

23

24

25

26

27

28