BEN H. LOGAN (S.B. # 071711)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA  90071
Telephone:    (213) 430-6000
Facsimile:    (213) 430-6407

DANIEL PETROCELLI  (S.B. # 97802)
DAVID MARROSO  (S.B. # 211655)
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067
Telephone:    (310) 246-6850
Facsimile:    (310) 246-6679

CHRISTOPHER CELENTINO (S.B. # 131688)
DUANE MORRIS LLP
101 West Broadway, Suite 900
San Diego, California 92101-8285
Telephone:    (619) 744-2246
Facsimile:    (619) 744-2201

Counsel for Lennar Corporation
and Lennar Homes of California, Inc.

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>BRIARWOOD CAPITAL, LLC,<br>　　　　　　Debtor.<br><br>————————————<br><br>BRIARWOOD CAPITAL, LLC,<br>　　　　　　Plaintiff<br><br>　v.<br><br>LENNAR CORPORATION, et al.<br><br>　　　　　　Defendants.<br><br>———————————— | Case No. 10-02677-PB11<br><br>Adversary Case No. 10-90118-PB11<br><br>Chapter 11<br><br>**NOTICE OF RULING BY JUDGE ROBERT A. MARK,  SOUTHERN DISTRICT OF FLORIDA**<br><br>Judge: Peter W. Bowie |

1    **TO THE HONORABLE PETER W. BOWIE, THE DEBTOR, AND PARTIES IN**

2    **INTEREST:**

3         PLEASE TAKE NOTICE THAT, attached hereto as Exhibit A and incorporated herein by

4    reference is a true and correct copy of the Memorandum of Opinion and Order Granting

5    Plaintiffs' Motion for Remand, issued by the Honorable Robert A. Mark, Judge, United States

6    Bankruptcy Court, Southern District of Florida on April 30, 2010.

7                                    /s/ *Christopher Celentino*

8                                    Christopher Celentino

1                                         EXHIBIT A

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RECEIVED
Bilzin Sumberg
By gportes at 5:03 pm, Apr 30, 2010
DOCKETED

**Tagged Opinion**



## ORDERED in the Southern District of Florida on April 30, 2010.

Robert A. Mark, Judge
United States Bankruptcy Court

---

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| LENNAR CORPORATION, *et al.*, )<br>)<br>        Plaintiffs, )<br>)<br>vs. )<br>)<br>BRIARWOOD CAPITAL LLC, *et al.*, )<br>)<br>        Defendants. )<br>) | Adv. No.10-02797-BKC-RAM-A |

### MEMORANDUM OPINION AND
### ORDER GRANTING PLAINTIFFS' MOTION FOR REMAND

This adversary proceeding was pending in state court before it was removed to this Court

after two of the defendants filed bankruptcy petitions in the Southern District of California.

Before the Court are Lennar Plaintiffs' Motion for Remand Under § 1452(b), or, in the

Alternative, Under the Abstention Doctrine Provided Under 28 U.S.C. §1334(c) ("Motion for Remand") and Motion of Debtors Briarwood Capital, LLC and Nicolas Marsch III for Transfer of Venue to the United States Bankruptcy Court for the Southern District of California ("Motion to Transfer Venue"). In the remand and transfer motions respectively, Plaintiffs seek to remand this case to the state court in Florida where the action has been pending for over a year and a half, and the Defendants seek to transfer this case to the Bankruptcy Court for the Southern District of California where the bankruptcy cases were just recently filed.

### *Procedural Background*

Prior to removal, this case was pending in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida (the "State Court"), Case No. 08-55741-CA-40 (the "Florida Action"). Jurisdiction to remove the case arose when two of the defendants, Briarwood Capital, LLC ("Briarwood") and Nicolas Marsch III ("Marsch"), filed voluntary chapter 11 petitions in the Bankruptcy Court for the Southern District of California on February 22, 2010, and February 23, 2010, respectively. On February 24, 2010, two days after filing its bankruptcy case, Case No. 10-02677-PB, (the "Briarwood Bankruptcy Case"), Briarwood filed its Notice of Removal of Action Under 28 U.S.C. § 1452(a) ("Notice of Removal").

The Notice of Removal was filed with the Clerk of the District Court for the Southern District of Florida and resulted in the opening of Case No. 10-20574-CIV-JORDAN (the "District Court Case"). The Notice of Removal should have been filed with the Clerk of Court for the United States Bankruptcy Court. As authorized by 28 U.S.C. § 157(a), the District Court for the Southern District of Florida entered a General Order of Reference on July 11, 1984. Pursuant to that Order and the District Court's Local Rule 87.2, all bankruptcy matters, including actions removed pursuant to 28 U.S.C. § 1452(a), are automatically referred to the bankruptcy

2

court. Specifically, the District Court's Local Rule 87.2 provides for notices of removal to "be filed with the Clerk of the United States Bankruptcy Court for the Division of the District where such civil action is pending." Because of the procedural error by the removing party, the case was pending in the district court for 30 days before it was referred to this Court. In that interim time, Plaintiffs filed their Motion for Remand [D.E.# 12 in the District Court Case] and Defendants filed their Motion to Transfer Venue [D.E.# 39 in the District Court Case].

Eventually, the case was referred to this Court by the district court's March 26, 2010 Order Granting Joint Motion for Entry of Stipulated Order for (1) Referral of Removed Case to the United States Bankruptcy Court for the Southern District of Florida, and (2) Schedule for Briefing and Hearing on Plaintiffs' Motion for Remand and/or Abstention, and Debtors' Motion for Transfer of Venue to the Southern District of California ("Reference Order") [D.E.# 43 in the District Court Case]. In its Reference Order, the district court imposed a briefing schedule on the parties. Shortly after receiving the action, this Court entered an Order Setting Hearing on Remand and Venue Motions [CP# 15], which set the hearing on the motions for April 19, 2010, and adopted the briefing schedule imposed by the Reference Order.

The Court has considered the Motion for Remand and accompanying Declaration of Samuel J. Dubbin (the "Dubbin Declaration") [D.E.# 13 in the District Court Case]; the Opposition of Briarwood Capital, LLC and Nicolas Marsch III to Lennar Plaintiffs' Motion for Remand Under 28 U.S.C. § 1452(b), or, in the Alternative, Under the Abstention Doctrine Provided Under 28 U.S.C. § 1334(c), and Supporting Memorandum of Law [D.E. # 37 in the District Court Case] and accompanying Declarations of Nicolas Marsch III, Scott M. Dimond, and Joseph R. Dunn [D.E. # 38 in the District Court Case]; the Motion to Transfer Venue and accompanying Declarations of Nicolas Marsch III, Scott M. Dimond, and Joseph R. Dunn [D.E.

3

# 40 in the District Court Case]; the Defendant FDI and Barry Minkow's Joinder in Opposition to Lennar Plaintiffs' Motion for Remand Under 28 U.S.C. § 1452(b), or, in the Alternative, Under the Abstention Doctrine Provided Under 28 U.S.C. § 1334(c) and accompanying Affidavit of Michelle B. Baker [D.E. # 41 in the District Court Case]; the Reply of Lennar Plaintiffs to Defendants' Opposition to Motion for Remand Under 28 U.S.C. § 1452(b), or, in the Alternative, Under the Abstention Doctrine Provided Under 28 U.S.C. § 1334(c) [CP# 11]; Lennar's Amended Opposition to Motion to Transfer Venue [CP# 21]; the Declaration of David Marroso [CP# 13]; the Second Declaration of Samuel J. Dubbin (the "2nd Dubbin Declaration") [CP# 14]; the Debtors' Reply to Plaintiffs' Opposition to Motion of Debtors Briarwood Capital, LLC and Nicolas Marsch III for Transfer of Venue to the United States Bankruptcy Court for the Southern District of California [CP# 27]; the Second Declaration of Scott M. Dimond [CP# 28]; the arguments of counsel at the hearing; and applicable law. For the reasons summarized in the Court's short bench ruling after the April 19th hearing, and for the reasons that follow, the Motion for Remand is granted and the Motion to Transfer Venue is denied.

### *Facts*

On September 19, 2008, Lennar Corporation and Lennar Homes of California, Inc. (together "Lennar" and "Plaintiffs") filed the Florida Action against Briarwood and its principal, Nicolas Marsch III ("Marsch"). The case was assigned to Judge Gill S. Freeman of the State Court's Complex Business Litigation Section. The Complaint was later amended on January 12, 2009, to include Barry Minkow ("Minkow") and his company, the Fraud Discovery Institute, Inc. ("FDI" and together with Briarwood, Marsch and Minkow, the "Defendants"). The genesis of the case, and other litigation between the parties, is a business relationship between Lennar and Marsch that began in 1997 and resulted in the development of a residential community in

4

Southern California. By both accounts, the venture was successful. However, since then, Lennar and Marsch have been embroiled in litigation over the rights and duties of each respective party, and the propriety of each party's actions taken post development.[1] The gravamen of the Florida Action is that the Defendants allegedly engaged in a highly orchestrated scheme to extort millions of dollars from Lennar through defamation, blackmail, interference with business relationships, and unfair practices.

In their Fourth Amended Complaint (the "Complaint") in the Florida Action, Plaintiffs allege five causes of action, all based on Florida state law: (1) violations of Florida's Civil RICO Law, Fla. Stat. §772.201, *et seq.*; (2) intentional interference with contractual and economic relations; (3) defamation, *per se*; (4) violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204; and (5) civil conspiracy. Plaintiffs demand a trial by jury on all counts. (Notice of Removal, Ex. A.)

In the seventeen months in which the Florida Action was pending prior to removal, a significant amount of activity occurred in the case. In particular, Judge Freeman entered orders on four motions to dismiss relevant to the instant proceedings: (1) a March 26, 2009, order

---

[1] The parties to the Florida Action are involved in several other cases currently pending in other jurisdictions including, but not limited to: *Briarwood Capital, LLC v. Lennar Land Partners II, et al.*, filed in November 2006 in San Diego Superior Court, California, Case No. GIC-875457; *Briarwood Capital, LLC v. HCC Investors LLC, et al.*, filed in December 2006 in San Diego Superior Court, California, Case No. GIC-877446; *Briarwood Capital, LLC v. HCC Investors LLC*, filed on September 3, 2009, in San Diego Superior Court, California, Case No. 37-2009-00097749-CU-BC-CTL; *Briarwood Capital, LLC, et al., v. KBR Group, LLC, et al.*, filed on May 21, 2009, in San Diego Superior Court, California, Case No. 37-2009-00090247-CU-BC-CTL; *Briarwood Capital, LLC, et al., v. KBR Group, LLC, et al.*, filed on May 22, 2009, in San Diego Superior Court, California, Case No. 37-2009-00090462-CU-BC-CTL; *Briarwood Capital, LLC, et al., v. KBR Group, LLC, et al.*, filed on October 26, 2009, in San Diego Superior Court, California, Case No. 09-CV-2680-CU-BC-CTL; Lennar *Homes of California, Inc., v. DLA Piper US LLP, et al.*, filed on January 28, 2008, in San Diego Superior Court, California, Case No. 37-2008-00076811-CU-PN-CTL; *Lennar Homes of California, Inc., et al., v. DLA Piper US LLP, et al.*, filed in San Diego Superior Court, California, Case No. 37-2008-00092842-CU-PN-CTL.

denying Defendants' motion to dismiss on grounds of *forum non conveniens*; (2) a May 4, 2009,

order denying defendants Minkow and FDI's motion to dismiss for lack of personal jurisdiction;

(3) an August 6, 2009, order denying defendants Minkow and FDI's motion to dismiss on

grounds of *forum non conveniens*; and (4) an August 6, 2009, order denying defendants Minkow

and FDI's motion to dismiss for lack of personal jurisdiction. (2nd Dubbin Decl., Exs. H-K.)

Having presided over the case for nearly a year and a half, Judge Freeman has issued over twenty

orders, held at least ten hearings on substantive discovery motions alone, and held three case

management conferences on April 6, 2009, December 10, 2009 and February 19, 2010. (Dubbin

Decl.) Most notably, since the April 6, 2009, case management conference, this case has been

set for a three week trial commencing on August 16, 2010.    Also pending in the Florida Action

at the time of removal was Lennars' Motion for Sanctions/Default Judgment against the non-

Debtor Defendants for alleged illegal conduct, including alleged violations of Judge Freeman's

prior discovery orders.    Judge Freeman set the sanctions motion for a full-day evidentiary

hearing on April 30, 2010.

    As noted earlier, on February 22, 2010, and February, 23, 2010, respectively, Briarwood

and Marsch (the "Debtors") filed voluntary Chapter 11 petitions in the Southern District of

California (the "Bankruptcy Cases").    Both cases are pending before Bankruptcy Judge Bowie

and the claims bar date in both actions is April 30, 2010.    The Notice of Removal, which

removed the Florida Action to the district court, was filed on February 24, 2010, two days after

Briarwood filed its petition.

    Both sides have filed papers in the Bankruptcy Cases related to the Florida Action.    On

February 28, 2010, Briarwood filed an adversary proceeding seeking a temporary restraining

order and preliminary injunction against the Plaintiffs to stay the litigation as to the non-Debtor

Defendants. Briarwood also sought injunctive relief preventing Lennar from taking any action in the Florida Action, including pursuing remand of the action back to the State Court. On March 4, 2010, Judge Bowie issued a temporary restraining order ("TRO") barring Plaintiffs from proceeding against the non-Debtor Defendants. The TRO did not limit Lennar's ability to seek remand and set a further hearing for March 11, 2010, to consider the issuance of a preliminary injunction. On March 5, 2010, Lennar filed its Motion for Remand in the District Court Case. On March 10, 2010, Lennar filed its Motion for Relief from the Automatic Stay and to Abstain Under 28 U.S.C. § 1334(c) ("Relief from Stay Motions") in the Bankruptcy Cases.

Following the March 11th hearing, Judge Bowie issued a preliminary injunction pursuant to Fed.R.Civ.P. 65, barring Plaintiffs from proceeding against the non-Debtor Defendants until April 21, 2010. The court also scheduled a hearing on April 21, 2010, to consider Lennar's Relief from Stay Motions and to consider an extension of the injunction. Judge Bowie also ruled that Plaintiffs were entitled to go forward with their sanctions motion against the non-Debtor Defendants. On March 26, 2010, the Debtor Defendants filed their Motion to Transfer Venue in the District Court. On March 29, 2010, Lennar filed a motion to extend the bar date for filing proofs of claim. That motion was also set for hearing on April 21, 2010, in conjunction with the hearing on the Relief from Stay Motions.[2]

### *Discussion*

Section 1334(b) of title 28 provides a broad grant of jurisdiction allowing district courts (and by reference, bankruptcy courts) to hear all matters arising under title 11, or arising in or related to cases under title 11. Moreover, any claim or cause of action pending in a state court

---

[2] Although this Memorandum Opinion is being issued after April 21st, the Court's findings and conclusions are based on the record as it existed on April 19, 2010, when the Motion for Remand was argued and does not take into account any subsequent filings or orders in the Bankruptcy Cases.

may be removed to the district court (and by reference, the bankruptcy court) under 28 U.S.C. §1452(a) if the district court has jurisdiction over such claim or cause of action under §1334. This broad grant of jurisdiction is tempered by the abstention provisions in §1334(c), which in some instances require the bankruptcy court to abstain and in all instances, permit the bankruptcy court to abstain even though subject matter jurisdiction exists. 28 U.S.C. §1452(b) similarly provides for remand, and thus, a declination of jurisdiction, "on any equitable ground."

Under these guiding statutory provisions, there is no question that Briarwood had the authority to remove the Florida Action to this Court and that this Court has subject matter jurisdiction. Now that the case is here, the question before this Court is where does it go – back to the State Court in Miami, or to the bankruptcy court in San Diego that is administering the Bankruptcy Cases? Although the question is stated simply, answering the question requires analysis of several issues, starting with two threshold issues. First, which motion should be considered first, the Motion for Remand or the Motion to Transfer Venue? Second, in addressing these motions, should the Court look to the law of the Eleventh Circuit, where this Court sits, or the law in the Ninth Circuit, where the Bankruptcy Cases are pending?

## A. The Motion for Remand Should be Decided First

Defendants argue that where a case is removed to bankruptcy court pursuant to "related to" jurisdiction, the case should be transferred to the bankruptcy court where the bankruptcy case is pending for that court to consider the motion for remand. *See Everett v. Friedman's Inc.*, 329 B.R. 40, 42 (S.D.Miss. 2005). Plaintiffs argue that the Motion to Remand should be considered prior to a motion to transfer venue because it raises jurisdictional issues. *In re W.S.F. –World Sports Fans, LLC*, 367 B.R. 786, 791 (Bankr.D.N.M. 2007); *In re AUSA Life Insurance Co., Inc. v. Citigroup, Inc.*, 293 B.R. 471, 474 (N.D.Iowa 2003); *In re Reliance Group Holdings, Inc.*, 273

8

B.R. 374, 340 (Bankr.E.D.Pa. 2002); *In re Global Underwriting Management, Inc.*, 147 B.R. 601, 603 (Bankr.S.D.Fla. 1992). This Court has previously adopted the majority view that jurisdictional issues are properly addressed before venue issues.[3] *In re United Container LLC*, 284 B.R. 162, 169 (Bankr.S.D.Fla. 2002) (citing *Lone Star Industries, Inc. v. Liberty Mutual Insurance*, 131 B.R. 269, 272 (D.Del.1991)). Defendants have not persuaded the Court to reconsider its earlier conclusion.

Deciding the jurisdictional issue first is consistent with the removal procedures in the statute. Removal jurisdiction is based upon the pendency of a bankruptcy case, here the Bankruptcy Cases pending in the Southern District of California. Nevertheless, when a case is removed under 28 U.S.C. § 1452(a), it is not removed to the district where the bankruptcy case is pending, but rather to the district where the state court case was pending. Moreover, under § 1452(b), "the court to which such claim or cause of action is removed" has the authority to "remand such claim or cause of action."

Thus, under the statutory scheme, the bankruptcy court to which the action is removed serves a gatekeeper function in which two jurisdictional issues can and should be decided. *Rayonier Wood Products, L.L.C. v. ScanWare, Inc.*, 420 B.R. 915, 919 (S.D.Ga. 2009) (local bankruptcy court does not act merely as conduit). First, is there jurisdiction under 28 U.S.C. § 1334 permitting removal under § 1452, and second, if there is jurisdiction, is it appropriate to exercise that jurisdiction or should (or must) the case be remanded back to the state court?

As noted earlier, the case was properly removed and there is subject matter jurisdiction under 28 U.S.C. § 1334(b). This Court's gatekeeper function is to determine whether that

---

[3] Although not the basis for the Court's ruling on this issue, the Court does note that the March 29, 2010 Order entered by Judge Bowie in the California Bankruptcy Court appears to contemplate litigation of the Remand Motion in the Bankruptcy Court for the Southern District of Florida. (Marroso Decl., Ex. T.)

jurisdiction can or should be exercised. Specifically, the Court must address Plaintiffs' argument that mandatory abstention is required under 28 U.S.C. § 1334(c)(2), or, in the alternative, that the Court should either abstain under the permissive abstention provision of § 1334 or remand the proceedings on equitable grounds pursuant to 28 U.S.C. § 1452(b). Before reaching the abstention argument, however, the Court must first address the choice of law issue.

### B. The Doctrine of Abstention is Applicable to Removed Actions in the Eleventh Circuit

Defendants initially argue that since the basis for removal is the pendency of the Bankruptcy Cases in the Southern District of California, the law of that jurisdiction should govern the jurisdictional and venue issues. The choice of law issue is important because the Eleventh Circuit and Ninth Circuit disagree about whether the abstention provisions in 28 U.S.C. § 1334(c)(1) and (c)(2) apply in cases removed under 28 U.S.C. § 1452. The Eleventh Circuit recognizes the abstention doctrine in cases removed pursuant to § 1452. *See Christo v. Padgett*, 223 F.3d 1324, 1331 (11th Cir. 2000). The Ninth Circuit disagrees. *In re Lazar*, 237 F.3d 967, 981-82 (9th Cir. 2001) and *Security Farms v. Int'l Brotherhood of Teamsters*, 124 F.3d 999, 1009 (9th Cir. 1997) (remand provisions of 28 U.S.C. § 1334(c) are inapplicable as a matter of law in the Ninth Circuit for state court actions removed pursuant to §1452(a), because no parallel state court proceeding exists). Although the Ninth Circuit's view is clearly a minority view, if Ninth Circuit law controls this Court's decision, the Court could not consider the mandatory abstention provisions in 28 U.S.C. § 1334(c)(2) in ruling on the Motion for Remand.

The Court finds that Eleventh Circuit law applies to this contested matter. As discussed earlier, pursuant to 28 U.S.C. § 1452(a), "[a] party may remove any claim or cause of action ... to the district court for the district where such civil action is pending ...." *See also*

Fed.R.Bankr.P. 9027. If Congress intended the law of the jurisdiction where the bankruptcy case is pending to control the removed action, it presumably would have provided for removal directly to that jurisdiction. That is not the law. The action has been removed to this Court. As discussed in the preceding section, this Court (like any court that receives an action removed from a state court in its district) performs a jurisdictional gatekeeper function, which includes consideration of remand motions before considering transfer of the proceeding to the home bankruptcy court. Since this Court, not the home court, performs the gatekeeper function, it can and should apply the law of its own circuit.    Accordingly, the law of the Eleventh Circuit governs this proceeding and the abstention provisions in § 1334(c)(1) and (c)(2) are applicable to the Motion for Remand.

### C. Mandatory Abstention is Required

A party may oppose removal by filing a timely motion for mandatory abstention under 28 U.S.C. § 1334(c)(2), which provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). Under the statute, parties seeking remand or abstention must satisfy each of the following elements: (1) there must be no independent basis for federal jurisdiction, other than § 1334(b); (2) the claims in the case must be related to a case under title 11 but not arise under or arise in a case under title 11; (3) the case must have been commenced in state court; and (4) the action can be adjudicated timely in state court. *See In re United Container LLC*, 284 B.R. at 172; *In re Rupp & Bowman Co.*, 109 F.3d 237, 239 (5th Cir. 1997). There is

11

no dispute as to the timeliness of Plaintiffs' Motion for Remand and neither party disputes that this case was commenced in state court. The three issues in dispute are whether there is an independent basis for federal jurisdiction, whether the claims in the case are non-core claims "related to" the Briarwood Bankruptcy Case, but not "arising in" that case, and whether the Florida Action can be timely adjudicated in the State Court.

### 1. There is no independent basis for federal jurisdiction

The first factor of §1334(c)(2) requires that no independent basis for federal jurisdiction exists, that is, diversity of citizenship or federal question jurisdiction. For diversity of citizenship jurisdiction to arise, there must be complete diversity of the parties, which is not present in the instant action. Instead, Defendants argue that the allegations in Count I of the Complaint, which alleges violations of Florida Civil RICO, Fla. Stat. §772.201, *et seq.,* implicate federal law issues sufficient to establish federal question jurisdiction.

A cause of action for violation of Florida Civil RICO law requires a showing of at least two incidents of criminal activity, or predicate acts. Fla. Stat. § 772.101, *et seq.* Count I alleges a "pattern of criminal activity consist[ing] of numerous incidents occurring over a period of more than two years, including: (a) extortion, as defined in Fla. Stat. § 836.05, in violation of Fla. Stat. § 772.102(a)(26); (b) mail fraud, as defined in 18 U.S.C. § 1341, in violation of Fla. Stat. § 772.102(b); (c) wire fraud, as defined in 18 U.S.C. § 1343, in violation of Fla. Stat. § 772.102(b); and (d) aggravated identity theft, as defined in 18 U.S.C. § 1028 & § 1028A, in violation of Fla. Stat. § 772.102(b)." (Complaint at ¶ 58.) Since the predicate acts include alleged violations of federal statutes, Defendants argue that proof of these violations will require interpretations of federal law creating federal question jurisdiction.

In support of their argument, Defendants rely on *Ayres v. v. General Motors Corp.*, 234 F.3d 514 (11th Cir. 2000). In *Ayres*, the plaintiff brought an action against General Motors and an automobile component manufacturer, for violation of Georgia's Civil RICO Law, specifically alleging that the defendants had conspired to withhold information about a manufacturer's defect from the public. Although the RICO claim was a Georgia state law claim, the *Ayres* court found that the trial court would be required to resolve substantial, disputed issues of federal law in connection with the federal mail and wire fraud violations that the plaintiffs were relying on as predicate acts in their RICO claim. As such, under the exceptional facts of that case, the *Ayres* court found that there was federal question jurisdiction. In so holding, the Eleventh Circuit cautioned, "[a]lthough a case may arise under federal law 'where the vindication of a right under state law necessarily turned on some construction of federal law,' *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983), 'the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction.'" *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 813, 106 S.Ct. 3229, 3234, 92 L.Ed.2d 650 (1986), *quoted in Ayres*, 234 F.3d at 517-518, *and In re United Container LLC*, 284 B.R. at 172. Thus, the court set forth a specific two-prong analysis for determining when the presence of a federal issue gives rise to federal question jurisdiction:

> (1) the *necessity* for Plaintiffs to prove, as an essential element of their state law cause of action, the existence of federal mail and wire fraud crimes as predicate acts, which crimes would be enforceable in a federal civil RICO cause of action; and (2) the fact that proof of the alleged federal mail and wire fraud crimes involves a *very substantial* federal question.

*Ayres*, 234 F.3d at 520 (emphasis added).

13

Despite Defendants' argument that this case is analogous to *Ayres*, the Court finds the facts more like those in *United Container* where a similar argument failed. In *United Container*, the Court applied the *Ayres* test to Plaintiffs' Florida Civil RICO count and found that it did not present a federal question because: (1) there were several non-federal predicate acts alleged, and (2) there was no federal statute present that required substantial interpretation. *In re United Container LLC*, 284 B.R. at 173.

The Defendants here argue that *United Container* is distinguishable since three of the four alleged predicate acts arise under federal law. Thus, they argue that Plaintiffs must necessarily prove a federal violation. Plaintiffs counter that the Complaint alleges numerous incidents of state law extortion, and therefore, Plaintiffs may prove the necessary predicate acts without having to prove any federal law violations. The Court is persuaded by Plaintiffs' argument and finds that it may not be necessary for Plaintiffs to prove a federal law violation here, where non-federal predicate acts are included in the Complaint. Second, Defendants argue that, similar to *Ayres*, Plaintiffs' state law RICO action requires a substantial analysis of the federal aggravated identity theft statute, 18 U.S.C. § 1028 & § 1028A. As this Court recognized in *United Container*, the analysis under the second prong of *Ayres* requires more than just the presence of a federal law, it requires "the existence of a right under federal law which will be supported by a construction of the federal law concluding that the federal crime is established, but defeated by another construction concluding the opposite." *Id*. at 173-174 (quoting *Ayres*, 234 F.3d at 519). The Court finds that Defendants have not made this showing and that the mere presence of the federal aggravated identity theft statute in the Complaint does not mean the trial court will necessarily have to interpret the federal statute.

14

In sum, this case is not one of those exceptional cases like *Ayres* where federal question jurisdiction exists in a case seeking relief only under state law. Proof of two predicate acts to support the Florida RICO claim may or may not require proof of federal law violations. Moreover, proof of the alleged federal statutes may or may not turn on construction of the federal laws. Based on these uncertainties, the Court concludes that the Florida Action does not present a "substantial federal question" which would support federal question jurisdiction.

### 2. *The Florida Action is a non-core matter "related to" the Briarwood Bankruptcy Case*

For mandatory abstention to apply, the removed action must be "related to" the Briarwood Bankruptcy Case, but not an action "arising under title 11" or "arising in" the Briarwood Bankruptcy Case. 28 U.S.C. §1334(c)(2). The Defendants argue that the Florida Action should be considered core since it asserts claims against the Debtor Defendants and the allowance of claims is expressly within the court's core jurisdiction under 28 U.S.C. §157(b)(2)(B). As such, they argue that mandatory abstention does not apply.

If Lennar had filed a proof of claim, this argument has some support in the case law. *See In re Newell*, 424 B.R. 730 (Bankr.E.D.N.C. 2010) (since proof of claim had been filed, plaintiffs' removed state court case against the debtor came within court's core jurisdiction precluding mandatory abstention); *Steinman v. Spencer (In re Argus Group 1700, Inc.)*, 206 B.R. 737, 747-48 (Bankr.E.D.Pa. 1996) (filing of a proof of claim which asserts the same claims raised against the debtor in a prepetition state court action transforms the state court action into a core proceeding).

Other courts have rejected the concept that the filing of a proof of claim changes the character of a prepetition lawsuit against the debtor. *See In re Toledo*, 170 F.3d 1340 (11th Cir.

15

1999); *In re Wood*, 825 F.2d 90 (5th Cir. 1987) (filing of a proof of claim triggers core jurisdiction over allowance of that claim, but does not transform separate litigation against the debtor into a core proceeding).

The Court need not and will not reach this issue because Lennar has not filed a proof of claim in the Bankruptcy Cases. In the absence of a claim, the case law and clear language of the statute compel a finding that the Florida Action was removed and is pending here solely based on "related to" jurisdiction.

This issue was addressed at length in *In re Asousa Partnership*, 264 B.R. 376 (Bankr.E.D.Pa. 2001). In that decision, after citing the court's earlier decision in *Steinman*, the court held that "when no proof of claim is filed, claims (or counterclaims) asserted against the debtor prepetition are not transformed into core proceedings simply because the debtor files for bankruptcy and removes them." *Id.* at 387 (citing several cases so holding, including *Bevilacqua v. Bevilacqua*, 208 B.R. 11, 16-17 (E.D.N.Y. 1997) and *Beneficial National Bank USA v. Best Reception Systems, Inc. (In re Best Reception Systems, Inc.)*, 220 B.R. 932, 949-50 (Bankr.E.D.Tenn. 1998).

In holding that the removed action was not a core proceeding, the *Asousa* court acknowledged that a proof of claim may ultimately be filed. Nevertheless, since a proof of claim had not yet been filed, the court properly concluded that the allowance or disallowance of a claim was not pending. Therefore, the removed action which included a counterclaim against the debtor, did not involve the "allowance or disallowance" of claims and was not a core proceeding. *In re Asousa Partnership*, 264 B.R. at 388. The Court agrees with that analysis. In looking at the core versus non-core nature of the removed case, the Court must look solely to the present record, not what may or may not happen in the Bankruptcy Cases.

The foregoing case law is consistent with the language in §1334(c)(2). That section directs the court to consider whether the pending proceeding (here, the Florida Action) is a "proceeding related to a case under title 11, but not arising under title 11 or arising in a case under title 11 . . . ." In applying this statutory directive, it is clear that the Florida Action is simply "related to" the Briarwood Bankruptcy Case. It did not arise under title 11 since it does not invoke any substantive right created by the Bankruptcy Code, *Toledo*, 170 F.3d at 1345, and it did not "arise in" the Briarwood Bankruptcy Case since it was filed 17 months before the Briarwood chapter 11 petition was filed and is not a "matter that could arise only in bankruptcy." *Id.* (citing *Wood*, 825 F.2d at 97). Thus, this adversary proceeding was removed and is pending in federal court solely based on "related to" jurisdiction and this element of mandatory abstention is satisfied.

### 3.  *The action can be adjudicated timely in state court*

The last contested element under mandatory abstention is whether the case "can be timely adjudicated" in the State Court. Although the burden is on the Plaintiffs to establish this element, *In re United Container LLC*, 284 B.R. at 174, meeting the burden does not require convincing proof that the case will be tried sooner in the state court than in federal court. *Id.* Rather, in analyzing this element, courts consider several factors, focusing on whether allowing the case to proceed in the state court will have an unfavorable effect on the administration of the bankruptcy case. *Id.* (citing *In re Midgard Corp.*, 204 B.R. 764, 778 (10th Cir. BAP 1997)). These factors include: (1) backlog of the state court and federal court calendar; (2) status of the proceeding in state court at time of removal; (3) status of the bankruptcy case; (4) the complexity of the issues to be resolved; (5) whether the parties consent to the bankruptcy court entering judgment in the non-core case; (6) whether a jury demand has been made; and (7) whether the

17

bankruptcy case is a reorganization or liquidation. *See In re United Container LLC*, 284 B.R. at 175 and cases cited therein.

The most significant factors in this case are (1) the status of the Florida Action at the time of its removal, including the scope of the proceedings which have already occurred; and (2) the status of the Bankruptcy Cases and the effect on the administration of those cases if the Court abstains. As summarized earlier and set out in greater detail in the Dubbin Declaration, this case was (and still is) specially set for a three week jury trial in the State Court on August 16, 2010. Although the parties disagree on how much discovery remains, the record is clear that there have been numerous hotly contested matters already presented in the Florida Action in which the State Court has conducted at least ten hearings, including three Case Management Conferences, and issued over twenty orders, including orders on substantive discovery motions.[4] Clearly, the State Court's familiarity with the case and the court's demonstrated desire to proceed to trial expeditiously make it far more likely that this case can and will be "timely adjudicated" in the State Court. This Court is not familiar with Judge Bowie's bankruptcy docket, but there is no reason to believe that Judge Bowie will have more time available than the State Court to complete the pretrial matters and get the case to trial.[5]

---

[4] At least two of Judge Freeman's orders have been appealed and affirmed by the Third District Court of Appeals for Florida. (Dubbin Decl.)

[5] There is also a reasonable likelihood that the district court would withdraw the reference pursuant to §157(d) based upon the Plaintiffs' demand for jury trial and stated non-consent to jury trial in the bankruptcy court. If the Plaintiffs file a proof of claim, they would arguably waive their right to jury trial against Briarwood and Marsch , *Langenkamp v. Culp*, 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990), but not their right to jury trial against the non-debtor Defendants. Admittedly, this Court is not familiar with the docket of the district court in the Southern District of California, but there is also no reason to believe that this case would get to trial sooner in that court than in the State Court here in Florida.

When pressed at oral argument in this Court on April 19, 2010, Defendants' counsel tried valiantly to explain why trying this case in the bankruptcy court would be important to the administration of the Bankruptcy Cases. Counsel suggested that Bankruptcy Judge Bowie could coordinate this action with other actions between the parties and suggested that if Lennar files a claim based on the Florida Action, such a claim could be estimated for confirmation in a streamlined proceeding.

None of the Defendants' arguments about the effect on the Bankruptcy Cases was persuasive. Lennar, Defendant Briarwood, and Defendant Marsh are involved in several pending lawsuits, see *supra*, note 1, and this is the only one which was removed. The Florida Action involves only state law issues and the Defendants include non-debtor defendants. It is speculative, at best, to believe that the resolution of this litigation could be handled more efficiently or expeditiously in the Bankruptcy Cases and therefore provide some significant benefit to the estate. It is far more likely that resolution would be delayed if the case was transferred to the bankruptcy court or ultimately, the district court for the Southern District of California.

Moreover, the bankruptcy court's authority to efficiently administer the Bankruptcy Cases will not be lost after remand. Section 1334(d) of Title 28 expressly states that the abstention provisions in § 1334(c) "shall not be construed to limit the applicability of the [automatic stay in 11 U.S.C. § 362], as such section applies to an action affecting the property of the estate in bankruptcy." Thus, this Court's decision to remand the Florida Action to the State Court does not preclude the bankruptcy court from denying stay relief if the court concludes that allowing the litigation to proceed would adversely affect the administration of the Bankruptcy Cases.

In sum, the Court is satisfied that this case will be "timely adjudicated" in the State Court as that term is used in the mandatory abstention provision of 28 U.S.C. § 1334(c)(2). Since all of the elements of 28 U.S.C. § 1334(c)(2) have been established, mandatory abstention and therefore remand to the State Court is required.

### D. Cause Exists for Equitable Remand

Plaintiffs argue alternatively that the Court should abstain under the permissive abstention provision in 28 U.S.C. § 1334(c)(1) or exercise its equitable remand authority under 28 U.S.C. § 1452(b). The Court agrees, finding that the record in this proceeding strongly supports remand under these provisions.

The doctrine of permissive abstention applies where "in the interest of justice, or in the interest of comity with State courts or respect for State law" the court finds it appropriate to abstain "from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). Similarly, § 1452(b) provides that "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b).

The doctrines of equitable remand and permissive abstention are similar and courts generally consider the same factors in analyzing both sections. *See In re United Container LLC,* 284 B.R. at 176 and cases cited therein. Although there is no exclusive list, courts have considered the following factors relevant in their analysis:

> (1) the effect, or lack of effect, on the efficient administration of the bankruptcy estate if discretionary abstention is exercised, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of related proceedings commenced in state court or other non-bankruptcy courts, (5) the jurisdictional basis, if any, other than § 1334, (6) the degree of relatedness or remoteness of the proceedings to the main bankruptcy case, (7) the substance

20

> rather than the form of an asserted "core" proceeding, (8) the
> feasibility of severing state law claims from core bankruptcy
> matters to allow judgments to be entered in state court with
> enforcement left to the bankruptcy court, (9) the burden on the
> bankruptcy court's docket, (10) the likelihood that the
> commencement of the proceeding in bankruptcy court involves
> forum shopping by one of the parties, (11) the existence of a right
> to jury trial, (12) the presence in the proceeding of non-debtor
> parties, (13) comity, and (14) the possibility of prejudice to other
> parties in the action.

*Id.* at 176; *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1167

(9th Cir. 1990).

At least one factor weighs against abstention – The Florida Action is closely related to

the Bankruptcy Cases since it is one of several litigation matters that need to be resolved as part

of the Bankruptcy Cases. Most of the factors, however, weigh heavily in favor of remand. First,

as discussed earlier, Defendants have not demonstrated that remanding the Florida Action to the

State Court  will hinder the California bankruptcy court's ability to efficiently administer the

Bankruptcy Cases. The Court is not persuaded by Defendants' argument that remand will lead to

inefficient and duplicative litigation if the Plaintiffs eventually file a proof of claim in the

Bankruptcy Cases. As discussed more fully in the Court's analysis of mandatory abstention in

Section C.2. *supra*, the filing of a proof of claim does not merge the claims adjudication process

with the underlying State law cause of action. Moreover, the California bankruptcy court retains

the authority to deny relief from the automatic stay pursuant to § 362 and § 1334(d). If it denies

stay relief, it also has the authority under § 105 to grant injunctive relief to enjoin the litigation

against the non-Debtor parties. Given the California bankruptcy court's broad authority to either

allow or not allow the Florida Action to proceed, the Court finds that abstention will have no

significant effect on the administration of the Bankruptcy Cases.

Application of the second and third factors also supports abstention and remand. As discussed earlier, the Florida Action raises solely state law issues. Although the Complaint may not raise any novel issues of Florida law, the litigation has been intense, with several discovery disputes already resolved and several issues likely to arise, many of which the State Court is familiar with.

Given all of the time and effort already expended by the State Court, factor thirteen, the interest of comity, supports discretionary remand. The Eleventh Judicial Circuit in and for Miami-Dade County has created a Complex Business Litigation Section to deal with large business cases like this one. *See* Administrative Order 08-02, entered by the Eleventh Judicial Circuit, Miami-Dade County, Florida; Fla.R.Civ.P. 1.201. The Florida Action is a complex case that Judge Freeman has presided over for more than a year and a half. There have been three case management conferences thus far and the judge has tenaciously adhered to the August 16, 2010 trial date, which was set early on in the case. The court has ruled on numerous jurisdictional and discovery motions, giving the court familiarity with the case that weighs in favor of keeping it in the State Court. Before the case was removed, Judge Freeman set a full day evidentiary hearing on Plaintiffs' Motion for Sanctions/Default Judgment against the non-debtor defendants for, among other things, violation of the court's orders. It is evident that resolving that motion and future pretrial disputes can and should be handled by the highly qualified judge who has presided over the case for the past 17 months. *See Lone Star Industries, Inc. v. Liberty Mutual Insurance,* 131 B.R. 269, 274 (D.Del.1991) ("As a matter of comity, remand would display a proper respect for a state court's role in deciding a purely state law case, and in particular, [the state court judge's] prior investment of time and efforts in managing the case.")

22

In contrast to the efficiency of allowing the case to proceed in the State Court, keeping the litigation in the federal court will likely be a burden on the docket of the California bankruptcy court or the district court, if the reference is withdrawn to conduct a jury trial.[6] In a case with solely state law issues, there is no reason to try this case in the federal court. These findings relate to the ninth factor – burden on the bankruptcy court's docket and the fifth factor, the absence of any basis for federal jurisdiction other than 28 U.S.C. § 1334.

The fourteenth factor, prejudice to the Plaintiffs, strongly supports remand. Allowing the Defendants to remove this action and transfer it to the California Bankruptcy Court at this stage would be overwhelmingly prejudicial to the Plaintiffs who have spent a considerable amount of time, effort and money litigating this case in their home forum. Restarting the case in federal court with a new judge will undoubtedly increase the time and expense of the litigation.

Finally, the record supports remand under the tenth factor: forum shopping. The filing of the Notice of Removal, and Motion to Transfer Venue certainly has a forum shopping "air" to it. The Debtors did not remove any of the several non-bankruptcy litigation matters pending in California state courts. Removing only the Florida Action creates a strong inference that the goal was not to move the litigation into the bankruptcy court for any bankruptcy purposes, but rather to move the litigation from Florida to California for the Debtors' convenience and the inconvenience of the Plaintiffs. The State Court previously denied motions to dismiss based on *forum non conveniens*. Removing the case seeks to accomplish the same result using a different procedural device.

---

[6] Plaintiffs' demand for jury trial is a separate factor supporting abstention or equitable remand. *In re United Container LLC,* 284 B.R. at 176 (the right to a jury trial is the eleventh factor supporting remand.)

23

In sum, after considering the relevant factors, the Court concludes that it should permissively abstain under § 1334(c)(2) and, for the same reasons, equitably remand the case back to the State Court under 28 U.S.C. § 1452(b).

### Conclusion

The filing of the Bankruptcy Cases provided subject matter jurisdiction for the removal of the Florida Action. Nevertheless, jurisdiction cannot and may not be exercised since abstention and therefore remand is mandatory under 28 U.S.C. § 1334(c)(2) and alternatively appropriate under 28 U.S.C. § 1334(c)(1) and 28 U.S.C. § 1452(b). Therefore, it is –

**ORDERED** as follows:

1. Plaintiffs Motion for Remand is granted.

2. Defendants' Motion to Transfer Venue is denied as moot.

3. Upon finality of this order, the Clerk shall close this adversary proceeding and transmit the record to the Circuit Court, Miami-Dade County, Florida, to become part of the record in the Florida Action, Case No. 08-55741-CA-40.

### ###

COPIES TO:
Scott M. Dimond, Esq.
Dimond Kaplan & Rothstein, P.A.
2665 S. Bayshore Dr., Ph-2B
Miami, FL 33133
(Counsel for Defendants Briarwood and Marsch)

Joseph R. Dunn, Esq.
Jeffrey Davis, Esq.
Mintz Levin Cohn Ferris Glovsky & Popeo, P.C.
3850 Carmel Mtn Rd #300
San Diego, CA 92130
(Counsel for Defendants Briarwood and Marsch)

Alvin E Entin, Esq

Entin & Della Fera, P.A.
110 SE 6 St #1970
Ft. Lauderdale, FL 33301
(Counsel for Defendants FDI and Minkow)

Meredith Mishan, Esq.
848 Brickell Avenue, Suite 1100
Miami, FL 33131
(Counsel for Defendants FDI and Minkow)

Samuel J. Dubbin, Esq.
Dubbin & Kravetz, LLP
1200 Anastasia Ave #300
Coral Gables, FL 33134
(Counsel for Plaintiffs Lennar Corp. and Lennar Homes)

David Marroso, Esq.
Daniel Petrocelli, Esq.
O'Melveny & Myers LLP
1999 Avenue of the Stars 7 Fl.
Los Angeles, CA 90067
(Counsel for Plaintiffs Lennar Corp. and Lennar Homes)

Scott L. Baena, Esq.
Bilzin Sumberg
200 S. Biscayne Blvd., Suite 2500
Miami, FL 33131
(Counsel for Plaintiffs Lennar Corp. and Lennar Homes)

Judge Gill Freeman, Circuit Court in and for Miami-Dade County, Florida
Judge Peter W. Bowie, U.S. Bankruptcy Court, S.D. Cal.

Jeffry A. Davis (SBN 103299)
Joseph R. Dunn (SBN 238069)
**MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.**
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Tel:    858-314-1500
Fax:    858-314-1501

Proposed Attorneys for Debtors
Briarwood Capital, LLC and
Nicolas Marsch III

UNITED STATES BANKRUPTCY COURT

Southern District of California

| | |
|---|---|
| In re<br><br>BRIARWOOD CAPITAL, LLC,<br><br>Debtor. | Case No. 10-02677-PB11<br>Case No. 10-02939-PB11<br><br>RS No. OMM-1<br><br>Chapter 11<br><br>**DEBTORS' OPPOSITION TO MOTION FOR RELIEF FROM STAY AND TO ABSTAIN UNDER 28 U.S.C. § 1334(c)** |
| In re<br><br>NICOLAS MARSCH III,<br><br>Debtor. | <u>Hearing Date</u><br>Date:   April 21, 2010<br>Time:   10:00 a.m.<br>Dept:   4<br>Judge: Peter W. Bowie |
| LENNAR CORPORATION and LENNAR HOMES OF CALIFORNIA, INC.,<br><br>Movants,<br><br>BRIARWOOD CAPITAL, LLC and NICOLAS MARSCH III,<br><br>Respondents. | |

4877364v.5

# **TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................... 1

II. FACTUAL BACKGROUND ................................................................... 5

    **A.**    The Debtors' Dealings with Lennar.......................................... 5

    **B.**    The Debtors' Bankruptcy Cases .............................................. 5

    **C.**    The Briarwood Adversary Proceeding..................................... 6

    **D.**    The Florida Action ................................................................. 6

    **E.**    The Underlying Litigation ....................................................... 7

III. RELIEF FROM THE AUTOMATIC STAY IS NOT WARRANTED ........ 9

    **A.**    No "Cause" Exists Under Bankruptcy Code section 362(d)(1)................................. 9

    **B.**    Relief from Stay Will Not Result in Meaningful Resolution of Issues Between the Parties........................................ 10

    **C.**    Stay Relief Would Interfere with the Administration of the Debtors' Bankruptcy Cases and Would Prejudice the Interests of the Debtors' Other Creditors.......................... 112

    **D.**    Any Judgment by Lennar Would Be Subject to Equitable Subordination and Setoff........................................ 15

    **E.**    The Interests of Judicial Economy and the Expeditious and Economical Determination of Lennar's Claims Dictate Denial of Stay Relief ........................... 16

    **F.**    The Florida Action Is Not Yet Even At Issue........................... 18

    **G.**    The "Balance of Hurt" Clearly Weights in Favor of the Debtors........................... 18

    **H.**    The Bankruptcy Cases were Commenced in Good Faith ......................... 19

IV. ABSTENTION IS NEITHER AVAILABLE NOR WARRANTED.......................... 20

    **A.**    Abstention is Not an Available Form of Relief ....................... 20

    **B.**    Even If the Abstention Doctrine Did Apply, Abstention is Not Mandatory ........... 22

    **C.**    Permissive Abstention is Not Appropriate ............................. 29

1

# TABLE OF AUTHORITIES

2

**Cases**

3

Abadie v. Poppin,
    154 B.R. 86 (N.D. Cal. 1993) ...................................................................... 29

Audre Recognition Sys. v. Casey (In re Audre, Inc.),
    210 B.R. 360 (Bankr. S.D. Cal. 1997) ........................................................ 15

Ayres v. General Motors Corp.,
    234 F.3d 514 (11th Cir. 2000) ............................................................... 23, 24

Barton v. Barbour,
    104 U.S. 126 (1881) .................................................................................... 19

Borne v. New Orleans Health Care, Inc.,
    116 B.R. 487 (E.D. La. 1990) ..................................................................... 29

Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for Southern Cal.,
    463 U.S. 1 (1983) ....................................................................................... 20

Gardner v. New Jersey,
    329 U.S. 565 (1947) .................................................................................... 11

In re Newell,
    2010 WL 730506 (Bankr. E.D.N.C. Feb. 25, 2010) ..........................24, 25, 27

In re America West Airlines,
    148 B.R. 920 (D. Ariz. 1993) ...................................................................... 10

In re Castlerock Props.,
    781 F.2d 159 (9th Cir. 1986) ....................................................................... 26

In re Comstock Fin. Svcs., Inc.,
    111 B.R. 849 (Bankr. C.D. Cal. 1990) ....................................................... 26

In re Conejo Enterprises, Inc.,
    96 F.3d 346 (9th Cir. 1996) ................................................................ passim

In re Curtis,
    40 B.R. 795 (Bankr. D. Utah 1984) .................................................... 9, 10, 11

In re General Carriers Corp.,
    258 B.R. 181 (B.A.P. 9th Cir. 2001) ........................................................... 21

In re Kemble,
    776 F.2d 802 (9th Cir. 1985) ....................................................................... 17

In re Kissinger,
    72 F.3d. 107 (9th Cir. 1995) ........................................................................ 18

In re Kronemyer,
    405 B.R. 915 (B.A.P. 9th Cir. 2009) ........................................................... 10

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In re Lazar,
    237 F.3d 967 (9th Cir. 2001) ........................................................................... 22, 28

In re Lazar,
    83 F.3d 306 (9th Cir. 1996) ................................................................................ 15

In re Patel,
    291 B.R. 169 (Bankr. D. Ariz. 2003) ......................................................... 12, 13, 14

In re Plumberex Specialty Products, Inc.,
    311 B.R. 551, n.11 (Bankr. C.D. Cal. 2004) .............................................. 9, 10, 19

In re Santa Clara County Fair Ass'n,
    180 B.R. 564 (B.A.P. 9th Cir. 1995) .................................................................. 10

In re The Roman Catholic Bishop of San Diego,
    374 B.R. 756 (Bankr. S.D. Cal. 2007) ................................................................ 21

In re World Solar Corp.,
    81 B.R. 603 (Bankr. S.D. Cal. 1988) .................................................................. 28

Lesser v. Gray,
    236 U.S. 70 (1915) ............................................................................................. 11

Nilsen v. Neilson (In re Cedar Funding, Inc.),
    419 B.R. 807 (B.A.P. 9th Cir. 2009) ............................................................ 22, 28

Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,
    458 U.S. 50 (1982) ............................................................................................. 26

Security Farms v. Int'l Brotherhood of Teamsters,
    124 F.3d 999 (9th Cir. 1997) ....................................................................... 22, 28

First Alliance Mort. Co. v. First Alliance Mort. Co.,
    269 B.R. 449 (C.D. Cal. 2001) .......................................................................... 28

United States Fidelity & Guaranty Co. v. Bray,
    225 U.S. 205 (1915) ........................................................................................... 11

**Statutes**

11 U.S.C. § 362(d)(1) ...................................................................................... 9, 11

11 U.S.C. § 502(b) ............................................................................................... 22

11 U.S.C. § 510(c) ............................................................................................... 15

28 U.S.C. § 1452 ........................................................................................... passim

28 U.S.C. § 157 ............................................................................................. passim

28 U.S.C. § 1334(c) ...................................................................................... passim

Debtors Briarwood Capital, LLC ("Briarwood") and Nicolas Marsch III ("Marsch"; together, the "Debtors") hereby submit this opposition (the "Opposition") to the motion of Lennar Corporation ("Lennar Corp") and Lennar Homes of California, Inc. ("Lennar Homes"; together with Lennar Corp and its various affiliates, "Lennar") for relief from the automatic stay and to abstain under 28 U.S.C. § 1334(c) (the "RFS Motion"). The Declarations of Nicolas Marsch III, Joseph R. Dunn and Scott M. Dimond in support of the Opposition are filed herewith.[1]

## I.

## INTRODUCTION

Lennar fails to demonstrate any "cause" exists for this Court to allow Lennar to continue its litigation in the Florida Action. There is nothing special about Lennar's claims in Florida. Those claims are no different than any other unliquidated claim asserted by a creditor in a bankruptcy case -- creditors who would *all* enjoy leverage against a debtor through the burden and pressure of forcing litigation of their claims outside of the bankruptcy process. But Congress has expressly vested *in the bankruptcy court* the duty and authority of ascertaining the validity of claims against a debtor and, using its equitable jurisdiction over such matters, dividing the bankruptcy estate among *bona fide* creditors. Lennar has already taken steps to attempt to avoid this perhaps unintended consequence of its "steamroll" tactics,[2] but it cannot hide from the legal principles and underlying policies which foster and guide the bankruptcy court's efficient and economical administration of bankruptcy cases, including the adjudication of claims against the estates.

Importantly, Lennar does not offer any evidence of harm it will suffer if this Court does not lift the automatic stay. Lennar has aggressively pursued the Florida Action at its own choosing and has expended time and resources in Florida with full knowledge that doing so might ultimately force the Debtors to seek bankruptcy protection. Lennar merely asserts that delay would result in

---

[1]   Capitalized terms not defined herein shall have the meaning ascribed to them in the RFS Motion. References to the Bankruptcy Code refer to 11 U.S.C. §§ 101 et seq., as applicable in this case. References to the Bankruptcy Rules refer to the Federal Rules of Bankruptcy Procedure, as applicable in this case.

[2]   In fact, Lennar has already filed motion to extend the April 30, 2010 date by which Lennar must file a proof of claim, and thereby formally submit to the equitable jurisdiction of this Court (the "Extension Motion"). In the Extension Motion, Lennar spends 16 pages arguing that the act of filing a proof of claim will have *no effect* on Lennar's claims or rights -- but then asks this Court to grant it relief so it doesn't need to file a proof of claim and face the risk that it is wrong!

1

4877364v.5

1   "an enormous loss of resources," but fails to identify any resource that is at risk of loss, or why the

2   parties couldn't simply pick up with the discovery process if and when the stay was lifted,

3   particularly *after* judgment in the Bridges Action has considerably narrowed the issues in Florida.

4         Instead, Lennar blatantly mischaracterizes the posture of the Florida Action, asserting that

5   "the Debtors let the Florida Action proceed to the edge of trial." In reality, the Florida Action

6   remains in its infancy despite the length of time it has been pending. The Florida Action is not yet

7   even at issue, the Fourth Amended Complaint (the "FAC"), having been filed just *days* prior to the

8   Debtors' bankruptcy cases. Lennar cannot blame the Debtors for such delay. During that time, the

9   Florida state court has granted multiple motions to dismiss based on the insufficiency of Lennar's

10   complaint. In fact, not a single defendant has answered any of the multiple versions of the

11   complaint, such that it is not yet clear what the ultimate scope of the Florida Action would be in

12   terms of defenses and counterclaims which may be asserted.[3]

13         Moreover, it is not clear that further litigation of Lennar's claims in Florida will even be

14   necessary during the pendency of the Debtors' bankruptcy cases. This Court may very well decide

15   that estimation of Lennar's claims is appropriate under Section 502(c) for purposes of confirming a

16   plan of reorganization. On the other hand, if the Debtors are not successful in the Bridges Action,

17   reorganization may not be possible and Lennar may choose not to pursue its claims against the

18   Debtors after all. In the event this Court *was* to determine that the Florida Action should proceed,

19   the Debtors would face an overwhelming financial burden. As set forth more fully below and in

20   the RFS Motion itself, an enormous amount of discovery has yet to be taken, including taking over

21   40 depositions and reviewing over 200 boxes of documents. In addition, significant disputes are

22   either pending or have yet to be briefed regarding that discovery which has taken place. Lennar

23   has stonewalled the discovery efforts and, as a result, the discovery deadlines have been pushed

24   back several times, the most recently due to Lennar's misconduct. In fact, the Debtors were only

25   able to conduct two depositions prior to the bankruptcy cases. The circumstances here are nothing

26

27   [3] Counterclaims by the Debtors can properly be asserted in this Court as part of an objection to any claim Lennar may assert against the Debtors' estates. These counterclaims would be core proceedings under 28 U.S.C. § 157(b)(2)(C)

28   over which the Court would undoubtedly have jurisdiction.

4877364v.5

1    like those cases cited by Lennar where a bankruptcy case was filed on the eve of trial or even

2    *during* trial, and judicial economy supports stay relief for the purposes of liquidating a claim

3    against a debtor. Here, stay relief would severely prejudice the Debtors and their estates, and

4    would result in *duplicative* litigation of the claims already being adjudicated in the Bridges Action.

5         In contrast, Lennar would suffer no prejudice by denial of the RFS Motion. Lennar's

6    claimed jury trial right on its claims against the estate bears little, if any, weight in the context of

7    bankruptcy. Nor do its complaints of inequity regarding the fact that the Debtors are pursuing

8    claims against Lennar in San Diego. Lennar cites no authority for any "tit-for-tat" application of

9    the automatic stay. Such an application would negate the core purpose of the stay: to provide the

10   debtor with a breathing spell from actions *by* creditors, and to allow the debtor the opportunity to

11   formulate and confirm a plan of reorganization -- including when that plan is based on a debtor's

12   liquidation of litigation assets. The Debtors' claims against Lennar and others, which are being

13   pursued for the benefit of the estates and their creditors, have no relation to whether Lennar can

14   pursue its claims in Florida. Those claims, as with the bulk of the claims against the Debtor,

15   should be adjudicated by this Court in connection with the claims allowance process, not used as

16   leverage in litigation on the other side of the country.

17        Finally, Lennar's ambiguous request that this Court "abstain in favor of the Florida Action"

18   is not only inappropriate in this Court (at least at this time), but the Ninth Circuit has repeatedly

19   held that abstention under Section 1334(c) is inapplicable to cases removed from state court under

20   Section 1452(a) -- as is the case with the Florida Action. Even if the abstention doctrine did apply,

21   the requirements for mandatory abstention cannot be met, and this case presents no compelling

22   circumstances supporting permissive abstention. The relevant factors and the policies guiding an

23   abstention determination weigh strongly in favor of denying such relief.

24        So, if trial is not imminent and the Florida Action may not even be necessary, why is

25   Lennar fighting so hard to have the Florida Action proceed? The truth is that the Florida Action is

26   *very* important to Lennar. This is true not in the sense of typical litigation, where a plaintiff simply

27   seeks to remedy a wrong. Instead, the Florida Action is an important tool in Lennar's overall

28

3

4877364v.5

attempt to minimize exposure for its misconduct relating to real estate projects in San Diego. Prior to the Debtors' bankruptcy cases, Lennar used the Florida Action to force the already cash-strapped Debtors to litigate in Florida -- away from their homes, their offices, and the rest of the pending litigation between the parties in California. Ultimately those tactics were partially "successful" in that the burden and expense of litigation forced the Debtors to commence their respective chapter 11 cases.[4] The purpose of commencing the bankruptcy cases, as with most debtors, was to obtain the "breathing spell" to which the Debtors are entitled under the bankruptcy code, and to focus their efforts on reorganization -- a process which hinges on the Debtors' success in litigation.

The Florida Action serves another important tactical purpose for Lennar. The claims in Florida are closely tied to the issues currently being tried in San Diego Superior Court, where the Debtors stand to recover hundreds of millions of dollars from Lennar. In particular, a number of the claims in the Florida Action are based on Lennar's assertion that the Debtors and their purported accomplices disseminated false and misleading information regarding Lennar's mismanagement and misconduct in its dealings with the Debtors -- the central issue on which the Superior Court is anticipated to rule in the coming weeks. A judgment *against* Lennar on those issues in San Diego would do serious damage to Lennar's claims in Florida, if not absolve the defendants from liability in that action entirely. Lennar seeks to force re-litigation of the same issues in the Florida Action as an "insurance policy" against an adverse judgment in San Diego.

In sum, Lennar's motives may drive the RFS Motion, but they do not give rise to legally cognizable grounds for granting stay relief. As set forth below, Lennar has not established "cause" to lift the automatic stay, which would likely doom the Debtors' reorganization efforts.

/ / /

/ / /

---

[4]   Lennar has also withheld millions of dollars due to Briarwood from the Bridges project without justification. *See* Complaint in Adv. Proc. No. 10-90184-PB (the "Turnover Action"), filed April 5, 2010, Docket No. 1, a copy of which is attached to the Dunn Declaration as Exhibit E and the contents of which are incorporated herein by reference.

4

## II.

## FACTUAL BACKGROUND

**A.    The Debtors' Dealings with Lennar**

Briarwood is engaged in the business of real estate development, including master planned communities.  Marsch is the sole member and manager of Briarwood.  The Debtors and Lennar are currently embroiled in various litigation pending in San Diego, California (the "Lennar Litigation"), including the trial of Briarwood's claims against Lennar for hundreds of millions of dollars arising out of Lennar's misconduct in connection with a real estate development joint venture, *Briarwood Capital, LLC v. HCC Investors, LLC, et al.*, Case No. GIC 877446 (the "Bridges Action").[5]  Trial in the Bridges Action, which case has been pending for over three years, commenced on June 22, 2009 after Lennar's extensive and unduly expensive pre-trial machinations designed to drive Briarwood and Marsch into submission.  The trial is expected to end this month.[6]

**B.    The Debtors' Bankruptcy Cases**

Briarwood and Marsch commenced their chapter 11 cases on February 23, 2010 and February 25, 2010, respectively (a "Petition Date").  The bankruptcy cases became necessary to, among other things, protect against the heavy demands of the Florida Action, which was commenced in Florida for the purpose of, among other things, forcing the Debtors to litigate the same issues on two coasts, and diverting the Debtors' focus and resources from the Bridges Action.

Briarwood and Marsch filed their Schedules of Assets and Liabilities in their chapter 11 cases.  *See* Docket Nos. 17 (Briarwood) and 36 (Marsch), respectively.  As Lennar notes in the RFS Motion, the Debtors' liquid assets have been depleted and effectively converted into litigation claims as a result of the wrongful conduct by Lennar.  In fact, as of the Petition Dates, the Debtors had combined liquid assets of less than $6,000.  *Id.*  This Court has issued orders in Briarwood's

---

[5]  The Debtors have an extensive history of dealings with Lennar, which has previously been described for this Court in Briarwood's Emergency Motion for a Temporary Restraining Order and OSC re Issuance of a Preliminary Injunction (the "PI Motion"), Adv. Proc. No. 10-90118 (the "Injunction Action"), Docket No. 3, and is set forth in the declaration of Nicolas Marsch III filed concurrently herewith and incorporated herein by reference.

[6]  Trial in the Bridges Action has been split into four phases.  Phase One is a bench trial regarding all equitable and derivative claims.  Briarwood, the plaintiff in the Bridges Action, rested its case-in-chief in Phase One on or around March 4, 2010.  Phase One is likely to conclude the week of April 5, 2010, and the Debtors anticipate a decision from the Superior Court by mid- to late-April.

5

1    and Marsch's bankruptcy cases setting April 30, 2010 (the "Claims Bar Date") as the deadline for

2    creditors to file proofs of claim. Docket Nos. 32 (Briarwood) and 48 (Marsch), respectively.

3    **C.    The Briarwood Adversary Proceeding**

4            As this Court is aware, after the Petition Dates, Lennar attempted to proceed against the

5    non-debtor Minkow Parties in the Florida Action despite the automatic stay in the Debtors'

6    bankruptcy cases. On February 28, 2010, Briarwood commenced the Injunction Action against

7    Lennar, requesting: (1) a judicial declaration that continuation of the Florida Action was a violation

8    of the automatic stay in Briarwood's bankruptcy case, and (2) an injunction staying all proceedings

9    in the Florida Action, pending further order of the court. *See* Adv. Proc. No. 10-90118-PB, Docket

10   No. 1. As alleged in that action, the claims against the Debtors in the Florida Action are

11   inextricably intertwined with the claims against the non-debtor Minkow Parties. *See* PI Motion, at

12   pp. 11-16, the contents of which are incorporated herein by reference. Lennar makes clear in its

13   FAC -- *and has not denied in any of its pleadings before this Court or the courts in Florida* -- that

14   it seeks to impose liability on the Debtors for the allegedly wrongful conduct of each of the other

15   defendants, including the non-debtor Minkow Parties. As such, the Debtors cannot be extracted

16   from the Florida Action logistically or otherwise, and the Debtors would be prejudiced if they were

17   not actively involved in discovery or other litigation regarding Lennar's claims in Florida.

18           On March 11, 2010, the Court granted a preliminary injunction (the "Preliminary

19   Injunction") staying the Florida Action, but allowing the parties to brief and argue in the Florida

20   District Court the issues stemming from removal of the Florida Action, including the Remand

21   Motion and the Venue Motion (defined below). *See* Adv. Proc. No. 10-90118, Docket No. 23.

22   **D.    The Florida Action**

23           On February 24, 2010, Briarwood removed the Florida Action to the United States District

24   Court for the Southern District of Florida (the "Florida District Court"), asserting that the Florida

25   Action is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O). *See* Declaration of

26   David Marroso in support of the RFS Motion ("Marroso Declaration"), at Exhibit O. On March 5,

27   2010, Lennar filed a Motion for Remand under 28 U.S.C. § 1452(b) or Abstention under 28 U.S.C.

28                                                          6

§ 1334(c) (the "Remand Motion") in the Florida District Court. *See* Marroso Declaration, Exhibit P. On March 25, 2010, the parties filed a joint motion (the "Joint Motion"), requesting the Florida District Court refer the Florida Action to the United States Bankruptcy Court for the Southern District of Florida (the "Florida Bankruptcy Court") and approve a briefing schedule on the Remand Motion and the Debtors' anticipated motion to transfer venue of the Florida Action to this Court (the "Venue Motion"). *See* Dunn Declaration, Exhibit A.

Pursuant to the Joint Motion, on March 26, 2010, the Debtors filed the Venue Motion and opposition to the Remand Motion (the "Remand Opposition"). *See* Dunn Decl., Exhibits B and C. In the Venue Motion, the Debtors request that the Florida Bankruptcy Court transfer the Florida Action so that this Court, and not the Florida court, can make a determination on the relief requested in the Remand Motion. *See* Dunn Decl., Exhibit B at 29-30, Exhibit C at 9-10.

On March 29, 2010, the Florida District Court entered an order granting the Joint Motion and referring the Florida Action to the Florida Bankruptcy Court. *See* Dunn Decl., Exhibit D. The Florida Action has been assigned to Judge Robert A. Mark of the Florida Bankruptcy Court, Adv. Proc. No. 10-02979-RAM, although a hearing has not yet been scheduled on the Remand and Venue Motions and it is unclear whether the Florida Bankruptcy Court will simply grant the Venue Motion and appropriately defer to this Court's determination on the Remand Motion.

E.    **The Underlying Litigation**

Briarwood's claims in the Bridges Action are by far the most significant asset of the Debtors' bankruptcy estates, and successful reorganization in both cases hinges on the unfettered ability to pursue those claims to judgment. Briarwood sought and obtained the Preliminary Injunction because the claims asserted in the Florida Action against the non-debtor Defendants cannot be pursued without affecting the Debtors' asserted liability in violation of the automatic stay. Lennar, having already forced the Debtors into bankruptcy, wants to eliminate any breathing spell and seeks to tighten its grasp on the Debtors' throats by forcing continued litigation in Florida State Court -- across the country from where the defendants reside, where all the other litigation is pending, and where the Debtors' bankruptcy cases are being administered.

7

4877364v.5

1    Lennar cannot seriously contend that the Florida Action is on the brink of trial as it portrays

2  in its papers.  While that action was commenced some eighteen months ago, the case is not yet

3  even at issue.  The proceedings to this point have primarily involved addressing jurisdictional and

4  venue issues, several motions to dismiss based on the insufficiency of Lennar's pleadings and an

5  appeal by the Minkow Parties on jurisdictional grounds.  Very little discovery has been conducted

6  in the case.  The Minkow Parties' appeal of the Florida State Court's ruling on jurisdictional issues

7  had just been resolved, during which time the Defendants had not conducted discovery to prevent

8  waiving the jurisdictional defenses being appealed.  *See* Dimond Decl. at ¶ 3.  Soon thereafter, the

9  defendants began conducting discovery, but immediately faced unreasonable positions by Lennar

10  regarding the location of depositions, the adequacy of Lennar's discovery responses, and the scope

11  of, and responses to, third-party discovery.  Dimond Decl. ¶ 7-14.  Depositions were scheduled,

12  cancelled and rescheduled, with the result that the Debtors were only able to depose two of the

13  seven members of Lennar's Board of Directors prior to the bankruptcy cases.  *Id.*  No discovery

14  has been conducted in the Florida Action since the Petition Dates and the parties have yet to

15  scratch the surface on a multitude of issues, including any defenses and counterclaims the

16  defendants may assert.  Dimond Decl. ¶ 18-19, 21.  In fact, even Lennar identifies 16 depositions

17  that have yet to be taken (and will need to be scheduled), multiple motions to compel (a large one

18  of which has not even been briefed), multiple hearings, and expert discovery (including

19  depositions), not to mention a full-blown evidentiary hearing.  *See* Marroso Decl., at ¶¶ 33b-c, 33e-

20  g, and 33i-o.

21    The Florida courts, however, have yet to consider the merits of Lennar's claims and have

22  yet to delve into the numerous discovery disputes which are pending and which are sure to arise in

23  the event the parties were to ever proceed in the Florida Action.  Instead, the Florida state court has

24  ruled on limited issues regarding the sufficiency of the complaint, jurisdiction and venue, as well as

25  limited issues regarding discovery and confidentiality.  *See* Dimond Decl., ¶ 4, 12.  Lennar's

26  portrayal of the Florida Action as being on the "verge" of trial is self-serving rhetoric.  While it is

27  true that certain deadlines had been set by the Florida state court, and Lennar would like to force

28

8

1   the defendants to adhere to unattainable goals regarding discovery and trial dates, those dates will

2   undoubtedly be moved if the Florida Action were ever to proceed.

3                                              **III.**

4              **RELIEF FROM THE AUTOMATIC STAY IS NOT WARRANTED**

5   **A.    No "Cause" Exists under Bankruptcy Code section 362(d)(1)**

6          Section 362(d)(1) provides that a court may terminate or modify the automatic stay "for

7   cause." "To obtain relief from the automatic stay, the party seeking relief must first establish a

8   prima facie case that 'cause' exists for relief under 362(d)(1)," which "requires the movant to

9   establish 'a factual and legal right to the relief that it seeks.'" *In re Plumberex Specialty Products,*

10  *Inc.*, 311 B.R. 551, 557, n.11 (Bankr. C.D. Cal. 2004). "If the movant fails to meet its initial

11  burden to demonstrate cause, relief from the automatic stay should be denied." *Id.* at 557. "A

12  creditor's mere unsupported allegation that continuance of the stay will cause it irreparable harm

13  will not suffice." *In re Curtis*, 40 B.R. 795, 803 (Bankr. D. Utah 1984) ("*Curtis*").[7]

14          In determining whether "cause" exists to lift the stay and allow litigation to proceed in

15  another forum, courts in the Ninth Circuit consider the twelve nonexclusive factors discussed in

16  *Curtis, supra*, which include the following factors relevant here: (i) whether the relief will result in

17  partial or complete resolution of the issues; (ii) the lack of any connection with or interference with

18  the bankruptcy case; (iii) whether the litigation in another forum would prejudice the interests of

19  other creditors, the creditors' committee and other interested parties; (iv) whether the judgment

20  claim arising from the foreign action is subject to equitable subordination under Section 510; (v)

21  the interests of judicial economy and the expeditious and economical determination of litigation for

22  the parties; (vi) whether the foreign proceedings have progressed to the point where the parties are

23  prepared for trial; and (vii) the impact of the stay on the parties and the "balance of hurt." *Curtis,*

24  *supra*, at 799-800, cited in *Plumberex, supra*, at 559; *see also In re Kronemyer*, 405 B.R. 915, 921

25  (B.A.P. 9th Cir. 2009) ("We agree that the *Curtis* factors are appropriate, nonexclusive, factors to

26

27  ⁷ Lennar's assertion in the RFS Motion that the Debtors have the burden to establish that the stay should remain in place overlooks the fact that Lennar bears the initial burden of establishing a *prima facie* case that "cause" exists. As set forth in the cases cited by Lennar, only after a *prima facie* case is established does the burden shift to the Debtors to

28  demonstrate that stay relief is unwarranted. *Plumberex, supra*, at 557; *Curtis, supra*, at 802-03.

                                              9

1   consider in deciding whether to grant relief from the automatic stay to allow pending litigation to

2   continue in another forum."). The Court should weigh the relevant factors in the context of the

3   "the entire bankruptcy case and its progress, and adjudicate stay relief issues from this

4   perspective." *Plumberex, supra*, at 557, quoting *In re Santa Clara County Fair Ass'n*, 180 B.R.

5   564, 567 (9th Cir. BAP 1995).[8]

6          As the *Curtis* court noted, "[i]n considering the foregoing factors, it must be borne in mind

7   that the process of determining the allowance of claims is of basic importance to the administration

8   of a bankruptcy estate." *Curtis, supra*, at 800-01, citing *Gardner v. New Jersey*, 329 U.S. 565, 573-

9   74 (1947); *Lesser v. Gray*, 236 U.S. 70, 74 (1915) ("A bankruptcy court in which an estate is being

10  administered has full power to inquire into the validity of any alleged debt or obligation of the

11  bankrupt upon which a claim or demand against the estate is based. This is essential to the

12  performance of the duties imposed upon it."); *United States Fidelity & Guaranty Co. v. Bray*, 225

13  U.S. 205, 217 (1915) ("The jurisdiction of the bankruptcy courts in all 'proceedings in bankruptcy'

14  is intended to be exclusive of all other courts, and that such proceedings include, among others, all

15  matters of administration, such as the allowance, rejection and reconsideration of claims . . . ").

16  "The Bankruptcy Code and Rules implement a speedy, efficient and economical method for the

17  determination and allowance of claims." *Curtis, supra*, at 801. Consideration of the relevant

18  factors demonstrates that Lennar has failed to establish "cause" exists under Section 362(d)(1).

19  **B.    Relief from Stay Will Not Result in Meaningful Resolution of Issues between the
            Parties**

20

21         The relief sought by Lennar will do little to advance the ultimate resolution of the multitude

22  of issues between the parties. As Lennar notes in the RFS Motion, Lennar and the Debtors are

23  parties to a number of existing lawsuits and anticipated proceedings arising out of Lennar's

24  misconduct in connection with real estate development projects in San Diego, including: the

25  [8]  In the RFS Motion, Lennar cites to *Plumberex* and that court's reliance on the *Curtis* factors, but Lennar then lists a
     set of factors it contends the Court should consider instead of the relevant *Curtis* factors, which appear to be

26  paraphrased from the factors used by the court in *In re America West Airlines*, 148 B.R. 920 (D. Ariz. 1993). Lennar
     also states that with respect to *its* factors, "any one of which alone could be sufficient to warrant lifting the automatic

27  stay." Lennar cites no authority for this proposition. In fact, *Plumberex* and other courts considering the *Curtis* factors
     engage in a balancing of each of the relevant factors. *Cf., Plumberex, supra*, at 560 (court is not required to give each

28  factor *equal* weight in making determination).

10

4877364v.5

1    Bridges Action, the McCrink Action (described in the Marsch Declaration), the DLA Piper Actions

2    (described in the Marsch Declaration), the Turnover Action (defined below), and an expected

3    equitable subordination action in the event Lennar is successful to any extent in any of the pending

4    litigation.[9] Even if Lennar were to prevail in the Florida Action, which will not be resolved

5    anytime soon, any damages there would only offset whatever damages may ultimately be awarded

6    to the Debtors in the aforementioned litigation.

7         In contrast, resolution of the Bridges Action will have a dramatic effect on the overall

8    resolution of issues between the parties.  Briarwood's claims in the Bridges Action are based on the

9    Lennar's mismanagement of the Bridges project -- the subject of a number of the various alleged

10   "false and misleading" communications that form the basis for Lennar's claims in the Florida

11   Action.  To the extent Briarwood prevails in the Bridges Action, that judgment will have *res*

12   *judicata* effect in the Florida Action and Lennar will be estopped from asserting many of the

13   allegations in that proceeding.  Lennar seeks relief from the stay to force re-litigation of those

14   issues in a foreign court, where the Debtors will be undoubtedly disadvantaged.  The interests of

15   judicial economy clearly support the continued imposition of the stay at this time to prevent the

16   duplicative litigation Lennar advocates.  *In re Patel*, 291 B.R. 169, 174 (Bankr. D. Ariz. 2003)

17   ("*Patel*") (denying stay relief based on, among other things, "preventing duplication of litigation").

18   **C.    Stay Relief Would Interfere with the Administration of the Debtors' Bankruptcy
           Cases and Would Prejudice the Interests of the Debtors' Other Creditors**

19

20        As stated above, any possibility of reorganization hinges on success in the Bridges Action.

     Counsel for the Debtors in that action is employed on a contingency fee basis and, therefore,
21
     continued litigation of that action requires relatively minimal funding.  In contrast, the Florida
22
     Action will require the Debtors to expend significant funds to engage in substantial discovery,
23
     motion practice, and ultimately a trial on the merits.  The Debtors' Florida counsel anticipates that
24

25   _____

26   [9] As set forth in the Marsch Declaration, while these lawsuits arise out of the dealings between the Debtors and Lennar,
     the subject matter of the litigation differs.  For instance, the Bridges Action, by agreement of the parties and the Court,
     only involves damages incurred by Briarwood through December 31, 2008.  The McCrink Action involves Lennar's
27   usurpation of the McCrink development opportunity.  Lennar's presence in the litigation with KBR is based on
     damages suffered by the Debtors as a result of Lennar and KBR attempting to prejudice the Debtors' pursuit of
28   recovery in the Bridges Action and other litigation.

                                          11

1    it will cost at least $350,000 to proceed through trial in the Florida Action, *provided that* there are

2    no appeals, that the trial will only take a matter of weeks (*cf.* trial of the same issues in the Bridges

3    Action has already lasted ten months), and there are no unforeseen discovery disputes -- all dubious

4    assumptions given Lennar's track record of extending litigation to increase its financial leverage

5    over the Debtors. *See* Dimond Decl. ¶ 22. It is undisputed that the Debtors do not have the funds

6    to continue in the Florida Action at this time. In fact, the burden of that litigation, coupled with

7    Lennar's wrongful withholding of millions of dollars from the Debtors, was a primary precipitating

8    factor of the Debtors' bankruptcy cases. In the event the Court grants Lennar relief to proceed in

9    Florida, the Debtors would suffer extreme prejudice as they would be unable to defend not only

10   against the claims against the Debtors, but also the claims against the non-debtor Minkow Parties

11   for which Lennar seeks to hold the Debtors liable.

12          In *Patel*, the court denied stay relief for a creditor to proceed with two state court

13   proceedings: one scheduled for trial in two months, and the other having concluded trial and

14   pending entry of judgment. *Patel, supra,* at 170. The court placed great emphasis on the policies

15   underlying the protection of debtors <u>and</u> other creditors, and the "breathing spell" afforded debtors:

16           [T]he "breathing spell" provided by the automatic stay is not
             merely for the benefit of the debtor, but is for the benefit of the
17           entire estate and creditor body . . . [T]he administrative bankruptcy
             processes are better suited to the interests of multiple parties,
18           which is a valuable benefit to the estate that should not lightly be
             foregone simply due to the happenstance that a creditor's litigation
19           was close to trial or close to judgment before the bankruptcy case
             was filed. That fluke of timing has little or nothing to do with
20           what the debtor's energies and resources should be focused on for
             the benefit of the entire estate and creditor body.
21

22   *Patel, supra,* at 173. The court also relied on the fact that "the bankruptcy court is in a better

23   position than is a nonbankruptcy court to ascertain what is important to be decided and when, and

24   what may be moot or may be resolved by alternative processes, such as confirmation of a plan. In

25   that context, nonbankruptcy court litigation may be extremely wasteful." *Id.* at 173-74. Finally,

26   the court, citing the Ninth Circuit in *In re Conejo Enterprises, Inc.*, 96 F.3d 346 (9th Cir. 1996)

27   ("*Conejo*"), stressed the importance of maintaining a level playing field for negotiation of a plan:

28                                                12

4877364v.5

> [N]o creditor should be given the opportunity to liquidate his claim on his schedule in his chosen forum, while other creditors are denied that strategic advantage. Indeed, it would be particularly inappropriate to grant such preferential leverage to one creditor simply because he got closer to judgment before bankruptcy intervened, because such a policy would encourage a rush to the courthouse that has always been recognized as contrary to sound bankruptcy policy, as evidenced by the preference provisions of § 547.

*Patel*, *supra*, at 174-75. Here, the Debtors are not only entitled to their "breathing spell," but require such relief in order to maintain the possibility of successful reorganization. The very purpose of the automatic stay would be thwarted if Lennar is allowed to proceed against the Debtors in a nonbankruptcy forum, both on its direct claims against the Debtors and its indirect claims asserted against the non-debtors.

Lennar's assertions that the Debtors somehow prefer to continue litigation with Lennar is absurd.[10] The Debtors for years have sought to *avoid* litigation regarding Lennar's misconduct in connection with the Bridges, and even entered into multiple tolling agreements to afford Lennar the opportunity to provide accurate accounting with respect to that project. Lennar, of course, did not provide any such accounting until after the Debtors were forced to commence litigation in state court and obtained an order directing such accounting. Thus, Lennar's attempt to portray the Debtors as litigious is belied by the fact that Lennar itself has spurred the very litigation of which it complains.[11] *See* Marsch Declaration at ¶ 9.

### D.    Any Judgment by Lennar Would Be Subject to Equitable Subordination and Setoff

This Court has recognized that equitable subordination of a creditor's claim(s) is available under Bankruptcy Code section 510(c) when: (1) the claimant engaged in some type of inequitable

---

[10] Regarding the post-petition "discovery" Lennar asserts the Debtors pursued, the Debtors have already explained that one of the Debtors' litigation attorneys, who had not been advised of the Debtors' bankruptcy cases or the automatic stay, had sent a letter to a third party regarding discovery after the Briarwood Petition Date, but immediately retracted the letter upon learning of the stay. *See* Injunction Action, Adv. Proc. 10-90118-PB, Docket No. 14, p.10, fn. 5 and Exhibit B. In addition, the Debtors had no choice but to commence the Injunction Action and to litigate the TRO and Preliminary Injunction against Lennar -- which was granted. Lennar's post-petition actions necessitated the Debtors take action to protect their interests in the Florida litigation.

[11] Lennar's assertion that Marsch somehow misled this Court in connection with a bankruptcy case 14 years ago is a desperate attempt to fabricate some doubt in the Court's mind as to the intentions of the Debtors, and is based on an incomplete record. The Debtors believe Lennar's assertions regarding the *Williams* case have no relevance to the issues raised by the RFS Motion, and so will not spend time addressing them here. They have already been adequately addressed in the Bridges Action. To the extent the Court desires the Debtors submit additional briefing or evidence demonstrating the propriety of Marsch's statement in *Williams*, the Debtors will do so.

13

4877364v.5

1    conduct, (2) the misconduct injured creditors or conferred unfair advantage on the claimant, and (3)

2    subordination would not be inconsistent with the Bankruptcy Code. *Audre Recognition Sys. v.*

3    *Casey (In re Audre, Inc.)*, 210 B.R. 360, 367 (Bankr. S.D. Cal. 1997), citing *In re Lazar*, 83 F.3d

4    306, 309 (9th Cir. 1996). Here, Lennar -- a business partner with fiduciary duties -- purposefully

5    deprived Briarwood and Marsch of the capital necessary to fund both the Lennar Litigation and

6    those parties' other development opportunities. As set forth in the Turnover Action, Briarwood is

7    to receive certain fees from HCC, which are in addition to any net cash flow otherwise owed, and

8    are accorded a protected status so as to not be subject to offsets, deductions, or adjustments. For

9    over nine years, Lennar honored its obligation to cause HCC to make these payments. However,

10   since June 2008, Lennar has caused HCC to withhold these payments from Briarwood, which to

11   date total approximately $3 million with accrued interest. Lennar has taken such actions as a

12   litigation tactic designed to increase the financial burden on the Debtors in the hopes they would

13   capitulate in the Lennar litigation, and has not provided any justification for its refusal to cause the

14   requirement payments to be made to Briarwood. In fact, HCC has issued Form K-1s to Briarwood

15   asserting that these funds have been "distributed" to Briarwood, but continues to hold the funds as

16   restricted cash. Lennar's willingness to continue to cause HCC to withhold these funds, in

17   conjunction with Lennar's other wrongful conduct at issue in the Bridges Action, has directly led to

18   the Debtors' inability to pay its other creditors (who now find themselves creditors of the Debtors'

19   estates), and has given Lennar significant leverage over the Debtors in the ongoing litigation to

20   recover damages as a result of Lennar's misconduct.[12] Thus, to the extent Lennar succeeds on any

21   claims in Florida, those claims are subject to equitable subordination based on Lennar's ongoing

22   inequitable conduct, which continues to put a stranglehold on the Debtors' estates.

23   **E.      The Interests of Judicial Economy and the Expeditious and Economical
           Determination of Lennar's Claims Dictate Denial of Stay Relief**

24

25        Relief from stay at this time would result in serious inefficiencies and defeat the notion of

     judicial economy. As stated above, adjudication of the claims in the Bridges Action will have a
26
     significant effect on the claims in the Florida Action. In fact, there is so much overlap in those
27

28   ---

     [12]  *See* Briarwood's Motion for Preliminary Injunction against HCC, attached to the Dunn Declaration as Exhibit F.

                                                    14

4877364v.5

1    claims that the parties have largely relied on production in the Bridges Action in responding to

2    discovery request in the Florida Action. *See* Dimond Decl., ¶ 5. Lennar's claims in Florida are

3    based on the allegation that the Debtors, with the purported assistance of an "enterprise" of co-

4    conspirators, disseminated "false and misleading" information regarding Lennar's misconduct with

5    respect to the Bridges Action and other dealings between Lennar and the Debtors.

6          In particular, Lennar alleges in the FAC that the Debtors sent "harassing and threatening

7    letters" to members of Lennar's board of directors which contained "false," "malicious" and

8    defamatory statements regarding Lennar's misconduct and mismanagement with respect to the

9    Bridges.[13] *See* FAC at ¶¶ 8-9. Lennar also asserts the Debtors and the Minkow Parties used a

10   website and an "enterprise" of assistants to disseminate additional "false, malicious, and

11   defamatory statements" regarding Lennar's dealings with the Debtors. *See* FAC at ¶¶ 22-25. If

12   and when the Debtors prevail in the Bridges Action, thereby establishing the truth of the allegedly

13   defamatory statements, the Debtors will have established their defense to the claims in Florida.

14         This case presents a similar situation to *Conejo*, where the Ninth Circuit found that the

15   bankruptcy court did not err in refusing to lift the automatic stay such that a creditor could pursue

16   its pre-petition state court action against the debtor. The Ninth Circuit found that the bankruptcy

17   court had reasonably relied on three different grounds for denying relief from the stay, including

18   that staying the state action gave the bankruptcy court and the other parties time to see whether the

19   creditor would file a proof of claim before the upcoming Claims Bar Date, or effectively waive its

20   right to payment from the bankruptcy estate. The court noted that "if [the creditor] filed a proof of

21   claim, the bankruptcy court would have core jurisdiction over the claim under 28 U.S.C. §

22   157(c)(2)(B), allowance of disallowance of claims," and that "[i]t would be absurd to allow the

23   state action to go ahead and require the estate to spend money litigating a debt that might

24   ultimately be uncollectable." *Id.* at 352-53 (emphasis added).[14]

25

26

27   [13]   In fact, the referenced letter in large part recites the allegations in the Bridges Action.
     [14]   The Ninth Circuit noted that "[t]he fact that the state action has been remanded to state court does not affect the
28   bankruptcy court's jurisdiction over the proof of claim filed by [the creditor]." *Conejo, supra*, at 353, n.5.

                                       15

4877364v.5

1    Here, by granting stay relief this Court would effectively be allowing duplicate litigation to

2  proceed not just in two courts, but in three.  The issues in Florida are largely being litigated in the

3  Bridges Action.  In addition, assuming Lennar files a proof of claim for its purported claims in the

4  Florida Action, this Court will have jurisdiction over those claims, any counterclaims asserted by

5  the estate (28 U.S.C. § 157(b)(2)(C)), and any other objection to those claims, which will include

6  the Debtors' defenses to the Florida claims.  *Conejo, supra,* at 353 ("By staying the state action, the

7  bankruptcy court promoted judicial economy and efficiency by minimizing the duplication of

8  litigation in two separate forums and preventing litigation of a claim that may have been

9  discharged in bankruptcy proceedings.").[15]  Thus, the analysis with respect to the proper forum to

10  adjudicate the Florida claims may change significantly following the April 30th Claims Bar Date.

11  **F.     The Florida Action Is Not yet Even At Issue**

12    As stated above, the Florida Action is not on the verge of trial as Lennar depicts; rather, it is

13  still in the pleading stages.  The massive amount of discovery and other proceedings Lennar admits

14  have yet to be undertaken by the parties distinguishes this case from those where the court relied on

15  judicial efficiency in granting relief from the stay in favor of pending state court proceedings.  The

16  Ninth Circuit cases cited by Lennar are clearly distinguishable.  *In re Kissinger,* 72. F.3d. 107 (9th

17  Cir. 1995) involved a state court action which was at the conclusion of trial when the bankruptcy

18  petition was filed.  *In re Kemble,* 776 F.2d 802 (9th Cir. 1985) involved a lawsuit which had

19  already proceeded to judgment, but was awaiting *re*-trial on damages issues.  Here, the Florida

20  state court has primarily determined issues regarding the sufficiency of the pleadings, jurisdiction

21  and venue, with limited involvement regarding discovery issues.  While that court has gained some

22  familiarity with the claims, it has not (and could not have) considered the merits of Lennar's claims

23  because no defendant has even answered the FAC.  In fact, it is not clear that the Florida Action

24  will return to state court given the removal under Section 1452(a).  Thus, Lennar cannot rely on the

25

26  [15] The *Conejo* court also held that "[g]iven the policies favoring reorganization of debtors, the bankruptcy court's
efforts to preserve a level playing field for all parties to negotiate a plan was a rational basis for denying relief from the

27  automatic stay." *Id.* at 353.  By maintaining the stay in the Florida Action, this Court can independently assess whether
the claims in Florida need to be litigated following a judgment in the Bridges Action, or whether the claims have been

28  sufficiently narrowed such that the Debtors can proceed with the plan process without full adjudication of those claims.

16

4877364v.5

1    posture of the Florida Action to establish "cause" for relief, particularly when litigation of the

2    Florida claims will ultimately depend on the outcome of the Bridges Action.

3    **G.    The "Balance of Hurt" Clearly Weights in Favor of the Debtors**

4         Importantly, Lennar has identified no harm it will suffer if stay relief is not granted at this

5    time.  Lennar's request for relief is based primarily on the inaccurate depiction that the Florida

6    Action is somehow in "an advanced stage" merely because it has been pending for some time.  The

7    FAC was just recently filed and the defendants have not yet responded to the FAC, which may

8    involve further motions to dismiss and counterclaims.  Although some discovery has been taken,

9    the bulk of discovery has yet to be scheduled.  Lennar has not asserted and cannot demonstrate that

10   the parties cannot merely pick up where they left off if and when it become necessary to liquidate

11   the claims against the Debtors as part of the claims allowance or estimation process.

12        Lennar emphasizes the fact that the claims in the Florida Action are based on state law.

13   Those claims, while based on a complex factual background, are not unique to Florida and do not

14   appear to present any complex, unsettled or novel area of law.  In fact, if any complexity lies in the

15   legal basis for the claims, it is in determining whether the defendants' alleged predicate acts of wire

16   fraud, mail fraud and violated the federal RICO statute, thus implicating *federal* law, not Florida

17   law.  The remaining claims -- Intentional Interference with Contractual and Economic Relations,

18   Defamation, Deceptive and Unfair Business Practices, and Civil Conspiracy -- are not unique to

19   Florida, and do not appear to present any novel issue of law.  There is no evidence this Court

20   cannot adequately adjudicate those claims as part of the claims allowance process, if necessary.

21        Lennar also emphasizes that it has demanded a jury trial in the Florida Action.  Whatever

22   right Lennar has to a jury trial, however, will no longer exist once it files a proof of claim in the

23   Debtors' bankruptcy cases.  Once a creditor files a proof of claim, it submits to the bankruptcy

24   court's equitable power and waives its rights to a jury trial for "resolution of disputes vital to the

25   bankruptcy process of allowance and disallowance of the claims, including the power of the

26   bankruptcy court to inquire into the validity of the claim." *Conejo, supra,* 96 F.3d at 354, n.6

27   (citations omitted); *see also Barton v. Barbour,* 104 U.S. 126, 133 (1881) ("right to trial by

28                                                17

4877364v.5

jury...does not extend to cases of equity jurisdiction."). The fact that Lennar will necessarily waive any jury trial right by filing a proof of claim and preventing discharge of its claims in the renders any jury trial right a non-factor in considering relief from the stay.[16] To the extent any harm exists, it is clearly outweighed by the significant burden on the Debtors of being forced to litigate the Florida Action.

**H.     The Bankruptcy Cases Were Commenced in Good Faith**

"Good faith is lacking only when the debtor's actions constitute a clear abuse of the bankruptcy process." *Plumberex, supra*, at 560. In the RFS Motion, Lennar carefully (and correctly) refrains from actually accusing the Debtors of acting in bad faith by filing their respective petitions for relief. After all, Lennar's aggressive litigation tactics against the Debtors in Florida and elsewhere depleted the Debtors' funds and forced the Debtors to seek the protection of bankruptcy. A mere review of the Debtors' schedules demonstrates this fact. Moreover, creditors of the Debtors had begun to foreclose on assets of the Debtors, including Marsch's real property and the Debtors' membership interests in various entities. KBR Opportunity Fund II, LP -- who had previously financed the Debtors' pursuit of the Bridges Action -- was in the process of foreclosing on the Debtors' interests in that litigation, undoubtedly the most important assets of the Debtors' estates. Marsch Declaration at ¶ 14. Thus, the bankruptcy cases were imperative not only to prevent prejudice in the Florida Action, but to protect the value of the Debtors' assets for the Debtors' creditors.

## IV.

## ABSTENTION IS NEITHER AVAILABLE NOR WARRANTED

**A.     Abstention is Not an Available Form of Relief**

The Florida Action was removed by Briarwood under 28 U.S.C. § 1452(a) and Lennar has not challenged removal. Instead, Lennar filed the Remand Motion, asking the Florida District Court (now the Florida Bankruptcy Court) to abstain under Section 1334(c) or remand to **Florida** state court under Section 1452(b). In the RFS Motion, however, Lennar requests that this Court

---

[16] To the extent a jury trial right survives, procedures are available for Lennar to request withdrawal of the reference from this Court. *See, e.g.*, 28 U.S.C. § 157(d).

18

"abstain in favor of the Florida Action." RFS Motion at 25:16-17. It is not clear exactly what relief Lennar seeks and how it proposes this Court grant such relief.[17] The Florida Action will at some point be pending in the Florida Bankruptcy Court, as will be Lennar's request for <u>that</u> court to abstain and/or remand. How can this Court abstain from hearing a proceeding not (yet) technically before it? In *In re General Carriers Corp.*, 258 B.R. 181 (B.A.P. 9th Cir. 2001), the court recognized that "[o]ne of the threshold requirements for mandatory or discretionary abstention...is that there must be a 'proceeding' from which the bankruptcy court can abstain" and that "[t]here is no pending proceeding unless an action either has been filed in a court, or has been removed to it." *Id.* The Florida Action has neither been filed in this Court nor removed to it.

To be sure, the Debtors concede that this Court is the proper court to ultimately determine issues regarding abstention and remand. As set forth in the Remand Opposition, the courts have long recognized a policy of transferring a proceeding to the "home bankruptcy court" for determinations of abstention and remand. *See* Dunn Decl., Exhibit B, at pp. 29-30. However, it is unlikely this Court can make such a determination unless and until the Florida Action is transferred to this Court. Indeed, the fact that courts recognize a transfer of the proceeding must occur for the "home bankruptcy court" to rule on such issues supports the notion that the proceeding must actually be pending before that specific court. Lennar, however, as it has attempted to do with the Florida Action vis-à-vis the Bridges Action, is attempting to take two bites at the same issue. In fact, Lennar's dual requests for abstention give rise to the risk of inconsistent rulings on that issue by this Court and the Florida Bankruptcy Court -- a determination which notably involves the court ruling on the disputed issue of whether the Florida Action is a core or non-core proceeding.

This Court need not get mired in the awkward procedural posture of Lennar's request. Even if this Court <u>can</u> rule on Lennar's request for abstention in this procedural posture, abstention <u>cannot</u> be granted. In a recent decision by Judge Adler in *In re The Roman Catholic Bishop of San Diego*, 374 B.R. 756 (Bankr. S.D. Cal. 2007) ("*RCB*"), which Lennar ironically cites in <u>support</u> of

---

[17] For instance, is Lennar asking this Court to "abstain" in favor of the Florida Bankruptcy Court, where the action is pending? Or is Lennar asking this Court to "abstain" in favor of allowing the action to proceed in Florida state court -- which is really a request for remand, not abstention, since there is no pending state court proceeding?

19

1 | abstention in the Remand Motion, the Court specifically held that the abstention provisions of 28

2 | U.S.C. § 1334(c), upon which Lennar relies here and in the Remand Motion, are inapplicable "as a

3 | matter of law" in the Ninth Circuit as to state court actions removed under 28 U.S.C. § 1452(a). As

4 | Judge Adler noted, the Ninth Circuit has repeatedly held that "abstention can exist only where there

5 | is a parallel proceeding in state court." *Security Farms v. Int'l Brotherhood of Teamsters*, 124 F.3d

6 | 999, 1009 (9th Cir. 1997) ("*Teamsters*"), cited in *RCB, supra*, 374 B.R. at 760 and *In re Lazar*, 237

7 | F.3d 967, 981-82 (9th Cir. 2001) ("*Lazar*"). Once a debtor removes an action from state court

8 | under Section 1452(a), "no other related state proceeding thereafter exists" and "§§ 1334(c)(1) and

9 | 1334(c)(2) are simply inapplicable." *Lazar, supra*, 237 F.3d at 982; *Teamsters, supra*, 124 F.3d at

10 | 1009-10; *Nilsen v. Neilson (In re Cedar Funding, Inc.)*, 419 B.R. 807, 820 (B.A.P. 9th Cir. 2009)

11 | (abstention doctrines inapplicable to removed action). Thus, as in the Remand Motion, Lennar's

12 | request for abstention in the RFS Motion clearly must be denied.

13 | **B.    Even If the Abstention Doctrine Did Apply, Abstention is Not Mandatory**

14 |     Although the Debtors do not believe it applies here, Section 1334(c)(2) of the Judicial Code

15 | requires a court to abstain from hearing a proceeding under certain circumstances. The

16 | circumstances here do not meet the requirements for mandatory abstention under Section

17 | 1334(c)(2), even if that provision did apply here.[18] Lennar's arguments for abstention in the RFS

18 | Motion are virtually identical to those raised in the Remand Motion. Rather than merely repeat the

19 | same arguments in the Remand Opposition regarding these issues, the Debtors will simply

20 | summarize those arguments below in relation to the relevant factors, and hereby incorporate by

21 | reference herein each of the arguments against abstention set forth in the Remand Opposition. *See*

22 | Dunn Decl., Exhibit B at 11-22.

23 |     First, the Florida Action could have been commenced in Federal Court. In the Florida

24 | Action, as in *Ayres v. General Motors Corp.*, 234 F.3d 514 (11th Cir. 2000), Lennar has alleged in

25 |

---

26 | [18] In the RFS Motion, Lennar cites Ninth Circuit authority for its "seven criteria" it states must be met for application

27 | of mandatory abstention. RFS Motion at 20:21-27. In the Remand Motion, however, Lennar cites Eleventh Circuit authority for only "four criteria" which must be met for application of mandatory abstention. Marroso Decl., Exhibit P, at p. 8. The discrepancy even in the criteria Lennar asserts should govern application of the abstention doctrine

28 | illustrates the problems posed by Lennar's dueling requests for abstention.

1   Count I of the FAC that the defendants violated Florida's RICO statute (Fla. Stat. § 772.101 et

2   seq.) by engaging in a "pattern of criminal activity," including, as Lennar alleges, violations of 18

3   U.S.C. § 1961(1)(A), (B), (C), or (D) -- the Federal RICO statute.  In Count I, Lennar lists four

4   predicate criminal acts which it alleges comprise the "pattern of criminal activity" engaged in by

5   the defendants: (a) extortion under Fla. Stat. § 836.05; (b) mail fraud under 18 U.S.C. § 1341; (c)

6   wire fraud under 18 U.S.C. § 1343; and (d) aggravated identity theft under 18 U.S.C. § 1028 and

7   1028A.  *See* FAC at ¶ 58.  Lennar further alleges that the defendants (along with other members of

8   the alleged "Enterprise") used "the Postal Service or a private or a commercial interstate carrier"

9   and used "interstate or foreign commerce" to carry out their criminal activity.  *See* FAC at ¶¶ 59-

10  60.  Lennar's success under Count I turns on proving defendants' alleged violations of federal mail

11  fraud, wire fraud, and identity theft laws.  Thus, vindication of Lennar's alleged rights under the

12  Florida statute necessarily turns on construction of the federal laws which govern the alleged

13  predicate acts.[19]  *Franchise Tax Bd. for the State of Cal. v. Constr. Laborers Trust for Southern*

14  *Cal.*, 463 U.S. 1, 9 (1983).[20]

15      Second, Lennar's claims in the Florida Action are a "core proceeding" arising in the

16  Debtors' bankruptcy case.  It is widely accepted that the allowance and disallowance of claims

17  under Section 157(b)(2)(B) is a core proceeding which "arises in" a title 11 case.  In *In re Newell*,

18  2010 WL 730506 (Bankr. E.D.N.C. February 25, 2010), on a motion for remand and abstention

19  and facts almost identical to those in the Florida Action, the court succinctly articulated:

20          By filing a proof of claim against a bankruptcy estate the creditor
            triggers the process of allowance and disallowance of claims,
21          thereby subjecting himself to the bankruptcy court's equitable
            power.  *** Understood in this sense, a claim filed against the
22

---

[19] In particular, Lennar has alleged the defendants committed federal aggravated identity theft under 18 U.S.C. §§ 1028
23  and 1028A.  Section 1028A makes it a crime to commit certain acts "during and in relation to" certain *federal* felonies
    enumerated in Section 1028A(c) and felony acts under the *federal* terrorism statute.  18 U.S.C. § 1028A.  Thus, the
24  federal violations alleged by Lennar are not limited simply to mail and wire fraud, but will require analysis and
    determination with respect to the federal identity theft statutes and the felony statutes which Lennar must prove the
25  defendants violated.  While the *Ayres* court noted that it "need not go so far" as to hold that every state RICO claim
    predicated on violation of federal mail and wire fraud statutes would trigger federal jurisdiction, the claims in Florida,
26  as in *Ayres*, present a very substantial federal question.
    [20] Contrary to Lennar's assertion that the Debtors have "conceded" in their Notice of Removal that Section 1334(b)
27  provides the "sole basis for federal jurisdiction," the Notice of Removal says nothing of the sort.  Instead, the Notice of
    Removal merely states that the Florida District Court had jurisdiction pursuant to Section 1334(b) -- not that Section
28  1334(b) jurisdiction was the *sole* source of federal jurisdiction.
                                                      21

4877364v.5

estate is a core proceeding because it could arise only in the context of bankruptcy.  *** [E]ven where a bankruptcy court would not have jurisdiction over proceedings filed in a state court, it has core jurisdiction over related proofs of claim filed against the bankruptcy estate.  The process of allowing or disallowing those claims is "core" because that process can only arise in the context of bankruptcy.  Here, the plaintiffs filed proofs of claim against the debtor's bankruptcy estate.  The debtor's affirmative defenses constitute objections to the claims, requiring the bankruptcy court to determine if the debtor is liable to the plaintiffs as well as the nature and extent of that liability.  Therefore **the state court proceedings initiated to determine the debtor's liability to the plaintiffs come under the bankruptcy court's core jurisdiction as part of the process of allowance or disallowance of claims**.

*Newell*, *supra*, at *3 (citations omitted) (emphasis added).  The Ninth Circuit followed the same reasoning in *Conejo*, where the court found that the bankruptcy court did not err in refusing to lift the stay such that a creditor could pursue its pre-petition state court action against the debtor:

The inevitability of the decision to file or not file a proof of claim was appropriately considered by the bankruptcy court in denying relief from the stay.  *** [I]f [the creditor] filed a proof of claim, the bankruptcy court would have core jurisdiction over the claim under 28 U.S.C. § 157(c)(2)(B), allowance of disallowance of claims.  If [the creditor] did not file a proof of claim, the state action claim would be discharged in bankruptcy.  It would be absurd to allow the state action to go ahead and require the estate to spend money litigating a debt that might ultimately be uncollectable.

*Id.* at 352-53 (emphasis added).[21]  Section 502 specifically vests in the bankruptcy court the power to determine the validity of claims against the estate.  11 U.S.C. § 502(b).  This process of allowance or disallowance of claims must necessarily involve, in some instances, the liquidation of such claims.  The express exclusion by Congress from Section 157(b)(2)(B) of liquidation of a personal injury tort or wrongful death claims indicates that proceedings to liquidate other claims (i.e., non-personal injury tort/wrongful death claims) fall under the core process of "allowance or disallowance of claims against the estate."  As one court noted:

If the liquidation and allowance of bankruptcy claims were permitted in the courts of creditors' choosing, conflicting judgments would arise, the estate's resources would be drained in

---

[21]  In the RFS Motion, as in the Remand Motion, Lennar cites inapposite case law to support its request for relief. *See, e.g.*, Dunn Decl., Exhibit B, at pp. 17-18 (distinguishing *United Container* and other cases cited by Lennar).  The plurality decision of the Supreme Court in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982) involved a determination of jurisdiction over claims brought by a debtor <u>against</u> a third party with no connection to the bankruptcy case.  Similarly, *In re Castlerock Props.*, 781 F.2d 159 (9th Cir. 1986) involved whether counterclaims asserted <u>by</u> a debtor in response to a motion for relief from stay constituted a core proceeding.

22

4877364v.5

1
2
3

> defending many and far flung civil actions, and the goal of efficient and equitable distribution of estate property to creditors according to the priority scheme enacted by Congress would never be met. That bankruptcy courts have exclusive jurisdiction over the liquidation and allowance of bankruptcy claims is a principle long recognized and not reasonably disputed.

4   *In re Comstock Fin. Svcs., Inc.*, 111 B.R. 849, 855 (Bankr. C.D. Cal. 1990) (emphasis added); *see*

5   *also id.* at 856 (noting that "liquidation is merely one step in the allowance process"). There is

6   nothing unique about the nature of the claims in the Florida Action which would prevent this Court

7   from assessing the validity of such claims. Bankruptcy courts regularly analyze and determine the

8   validity of asserted state law claims in connection with the allowance/disallowance process. The

9   applicability of state law to the issue of a claim's validity does not take remove that determination

10  from the bankruptcy court's "core" jurisdiction. *See* 28 U.S.C. § 157(c).

11          The RFS Motion includes a footnote citing *Conejo* and arguing that the even if Lennar files

12  a proof of claim, such claim would not "merge" with the underlying litigation, which would remain

13  "non-core." RFS Motion at p.22 n.17, citing *Conejo, supra*, 96 F.3d at 353. While *Conejo* did find

14  that "the filing of a claim does not consolidate it with the pending state law case," that court did not

15  hold that the state court proceeding would be a "non-core" proceeding as Lennar asserts. *Conejo,*

16  *supra*, 96 F.3d at 349. While it is true that Lennar has yet to file a proof of claim (the Claims Bar

17  Date is weeks away), Lennar's claims were scheduled by the Debtors as undisputed, contingent,

18  disputed and subject to setoff. Thus, Lennar will be forced to either file a proof of claim (and

19  thereby submit to the equitable jurisdiction of this Court), or by failing to file a proof of claim

20  accept discharge of its pre-petition claims against the Debtors. As noted in *Newell*, the Debtors'

21  defenses in the Florida Action will serve as an objection to such claim and the issues in Florida will

22  be adjudicated in the context of the claims process, including any counterclaims the Debtors may

23  assert against Lennar. It would be mere form over substance to determine that the Florida claims

24  are "non-core" simply because Lennar has yet to file a proof of claim. Determination of the

25  validity of Lennar's claims is certainly within the core jurisdiction of this Court. *Newell, supra*, at

26  *3 (state court proceedings initiated to determine debtor's liability to the plaintiffs come under the

27  bankruptcy court's core jurisdiction as part of the process of allowance or disallowance of claims).

28

4877364v.5

1        Third, as discussed above, the Ninth Circuit has been clear that once a debtor removes an

2  action from state court under Section 1452(a), "no other related state proceeding thereafter exists"

3  and sections "1334(c)(1) and 1334(c)(2) are simply inapplicable." *Lazar, supra,* 237 F.3d at 982;

4  *Teamsters, supra,* 124 F.3d at 1009-10; *Nilsen v. Neilson (In re Cedar Funding, Inc.),* 419 B.R.

5  807, 820 (B.A.P. 9th Cir. 2009) (abstention doctrines inapplicable to removed action).

6        Fourth, Lennar has not presented any credible evidence that the claims will be "timely

7  adjudicated" in state court -- or in the Florida Bankruptcy Court where the Florida Action will be

8  pending absent remand. As the party moving for abstention, Lennar has the burden of

9  demonstrating that the Action could be "timely adjudicated" in Florida State Court. *First Alliance*

10  *Mort. Co. v. First Alliance Mort. Co.,* 269 B.R. 449, 455 (C.D. Cal. 2001). Courts analyzing this

11  factor have focused not just on the ability of the state court to most efficiently adjudication the

12  action, but also on the effect on the chapter 11 proceedings of abstention in favor of the state court.

13  COLLIER ON BANKRUPTCY ¶ 3.05[2] ("timeliness must be referenced against the needs of the title

14  11 case, rather than against an absolute time guideline."); *In re World Solar Corp.,* 81 B.R. 603

15  (Bankr. S.D. Cal. 1988) (risk of endangering reorganization supported denial of abstention).

16        Lennar fails to address the impact of abstention on the needs of the chapter 11 estates, but

17  merely states that "no meaningful progress can be made" unless the Florida Action proceeds. RFS

18  Motion at 19:1-2. As set forth in Section III.C and III.E above, and incorporated by reference,

19  Lennar's depiction that the Florida Action is a case on the brink of trial is not founded in reality.

20  Not a single Defendant has even answered the operative complaint (which was filed just days

21  before the Petition Dates), and the complaint will likely be met with further attacks on its

22  sufficiency and/or other dispositive motions, and remains subject to the assertion of counterclaims

23  by the Defendants. Thus, Lennar's "evidence" that trial is just around the corner and that the

24  Florida court has irreplaceable familiarity is illusory and should carry little if any weight. *See,*

25  *e.g., Borne v. New Orleans Health Care, Inc.,* 116 B.R. 487 (E.D. La. 1990) ("timely adjudication"

26  not met where answer or dispositive motions filed by only one defendant).

24

4877364v.5

1    It is clear that adjudication of the Florida Action in Florida State Court would have a severe

2    detrimental effect on the Debtor's reorganization efforts. The Debtors do not have the means to

3    defend the Florida Action at this time, which requires significant travel and expense simply to

4    participate in the litigation. Knowing this, Lennar has attempted to use the state court process to

5    steamroll the financially-distressed Debtors in the hopes of preventing the use of findings from the

6    trial in the Bridges Action to defend against the claims in Florida. Abstention would foster

7    duplicative litigation which will unduly burden the Debtors' estates.[22]

8    Fifth, it bears noting that while jurisdiction may exist in the Florida Bankruptcy Court

9    under Section 1334, the Debtors maintain that this Court, which undoubtedly has jurisdiction over

10    claims against the Debtors' estates, is the proper Court to adjudicate those claims. In sum, even if

11    mandatory abstention did apply, the relevant factors do not support application of that doctrine.

12    **C.    Permissive Abstention is Not Appropriate**

13    In the RFS Motion, Lennar gives short shrift to the permissive abstention factors, simply

14    listing a number of factors and concluding that each relevant factor "is readily satisfied or does not

15    apply." RFS Motion at p. 24. As with mandatory abstention, the Debtors thoroughly addressed the

16    permissive abstention factors in their Remand Opposition and hereby incorporate those arguments

17    and assertions herein by reference (to the extent this Court determines abstention *can* be granted).

18    *See* Dunn Decl., Exhibit B, at pp. 22-29.

19    WHEREFORE, for the foregoing reasons, the Debtors respectfully request the Court deny

20    the RFS Motion in its entirety. At the very least, relief from the stay should be denied at this time

21    and until a determination is made by the court in the Bridges Action, at which time the scope of the

22    Florida Action will be narrowed considerably.

23    Dated: April 5, 2010            /s/ Joseph R. Dunn
                                       Jeffry A. Davis / Joseph R. Dunn
24                                     MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
                                       Proposed Attorneys for Debtors
25                                     Briarwood Capital, LLC and Nicolas Marsch III

26
      ---
      [22]   In the RFS Motion, Lennar cites *Abadie v. Poppin*, 154 B.R. 86 (N.D. Cal. 1993) as an example of a case where
27    abstention was granted when the case was less advanced than the Florida Action. As Lennar knows from its review of
      that case, *Abadie* is inapposite. That case involved a non-core, post-petition malpractice action between non-debtors
28    which the court found had no place in the bankruptcy court.
                                                        25

4877364v.5